Jimmy Don WOOTEN *v.* STATE of Arkansas

CR 95-975 931 S.W.2d 408

Supreme Court of Arkansas
Opinion delivered September 16, 1996

*Gibbons Law Firm, P.A.*, by: *David L. Gibbons*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Deputy Att'y Gen., Sr. Appellate Advocate for appellee.

ANDREE LAYTON ROAF, Justice. Appellant Jimmy Don Wooten was convicted of capital murder, criminal attempt to commit capital murder, and aggravated assault. Wooten was sentenced to death by lethal injection on the capital murder charge, thirty years' imprisonment on the attempt-to-commit-capital-murder charge, and six years' imprisonment on the aggravated-assault charge. On appeal, he contends that the trial court erred in (1) overruling his

*Batson* objection during jury selection, (2) in allowing victim-impact evidence during the penalty phase of his trial, and (3) in failing to suppress identification testimony. We find no error and affirm.

On August 5, 1994, David LaSalle, Henry Teb Porter, and Molly Porter were hiking on a forest trail near the Long Pool recreation area in Pope County when they encountered appellant Jimmy Don Wooten. Wooten was riding a six-wheel all-terrain vehicle. At trial, Henry Porter testified that the group had three encounters with Wooten before he attacked them and shot David LaSalle. LaSalle died as a result of a single gunshot wound to the head. Porter also testified that Wooten shot him in the shoulder, forearm, and face, and that he was able to remove the key from Wooten's all-terrain vehicle before Wooten chased him into the woods. Molly Porter, Henry Porter's daughter, testified that Wooten shot LaSalle and shot her father and chased after him.

On the day of the shooting, Wooten reported that an assailant who looked just like him had stolen his six-wheel vehicle while he was fishing near Long Pool and had shot at him using the .22-caliber pistol he had in the vehicle. Wooten claimed that he later found the vehicle with the gun abandoned by the side of the road near his truck. A .22-caliber bullet was recovered from David LaSalle's body. It was determined that Wooten's gun fired a spent .22-caliber cartridge found at the location where LaSalle and Porter were shot. In addition, swimming trunks found at Wooten's home matched Henry and Molly Porter's description of trunks worn by the assailant.

In a bifurcated proceeding, the jury found Wooten guilty of capital murder. During the penalty phase of his trial, the jury found one aggravating circumstance and concluded that it justified beyond a reasonable doubt a sentence of death.

### 1. Jury Selection

 Wooten first argues that the trial court erred in allowing the state to remove the sole African-American from the jury panel by a peremptory strike when she was otherwise qualified and unbiased and not challenged for cause. In *Prowell* v. *State*, 324 Ark. 335, 921 S.W.2d 585 (1996), we recently set forth the standard to be applied in reviewing an objection based upon *Batson* v. *Kentucky*, 476 U.S. 79 (1986). We wrote:

The procedures to be followed when a *Batson* objection is raised are well established:

> First, the defendant must make a prima facie case that racial discrimination is the basis of a juror challenge. In the event the defendant makes a prima facie case, the State has the burden of showing that the challenge was not based upon race. Only if the defendant makes a prima facie case and the State fails to give a racially neutral reason for the challenge is the court required to conduct a sensitive inquiry.

*Mitchell v. State*, 323 Ark. 116, 913 S.W.2d 264 (1996); *Heard v. State*, 322 Ark. 553, 910 S.W.2d 663 (1995). Further, this Court has stated that a prima facie case may be established by: (1) showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose, (2) demonstrating total or seriously disproportionate exclusion of blacks from the jury, or (3) showing a pattern of strikes, questions, or statements by a prosecuting attorney during voir dire. *Id.* The standard of review for reversal of a trial court's *Batson* ruling is whether the court's findings are clearly against the preponderance of the evidence. *Id.*

In the instant case, the State exercised a peremptory challenge to excuse Ms. Shirley Hatley. The prosecuting attorney stated that Ms. Hatley could not say that she would be able to sign the death-penalty form if the State proved its burden. Counsel for Wooten objected based upon *Batson* and stated for the record that Ms. Hatley was the sole African-American on the panel. Wooten's counsel asserted that Ms. Hatley in fact stated that she could consider the death penalty. In response, the prosecuting attorney asserted that Ms. Hatley was the only juror who stated that she did not know whether she could sign the death-penalty form. The prosecuting attorney also noted for the record that Wooten and the officers involved in the case were all white, but he conceded that Wooten was not precluded from raising a *Batson* objection. *See Powers v. Ohio*, 449 U.S. 400 (1991) (defendant's race is irrelevant to his standing to object to the discriminatory use of peremptory challenges).

In overruling Wooten's *Batson* objection, the trial court concluded that Ms. Hatley was very hesitant in her responses to the

state and that she never said that under the proper circumstances she could actually vote for the death penalty. The trial judge stated, "I don't think there is a proper *Batson* situation here and I'll allow them to use a peremptory challenge on Ms. Hatley."

■ On appeal, Wooten contends that a prima facie case was established because the sole African-American was excused from the panel. *See Mitchell* v. *State*, 295 Ark. 341, 750 S.W.2d 936 (1988). Granted, we have stated that the prosecution's use of a peremptory challenge to remove the only black prospective juror may establish a prima facie case. *Cooper* v. *State*, 324 Ark. 135, 919 S.W.2d 205 (1996); *Mitchell* v. *State*, 295 Ark. 341, 750 S.W.2d 936 (1988). However, as in *Prowell* v. *State, supra,* here the prosecutor volunteered an explanation for the challenge, and the trial court made no specific ruling on whether a prima facie case was made. In *Prowell,* this court recognized that once a prosecutor has offered a race-neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot. *See Hernandez* v. *New York,* 500 U.S. 352 (1991).

Wooten also asserts that the State failed to provide a racially neutral reason for the challenge, and he contends that a white venireperson examined at the same time as Ms. Hatley and two others who were questioned after Ms. Hatley was excused gave answers similar to Hatley's, but were not challenged. In support of his argument, Wooten cites *Ford* v. *Norris,* 67 F.3d 162 (8th. Cir. 1995), where the court stated that "a prosecutor's failure to apply a stated reason for striking black jurors to similarly situated white jurors may evince a pretext for excluding jurors solely on the basis of race."

■ However, Wooten did not present this argument to the trial court. In fact, Wooten did not mention other similarly situated jurors when the prosecuting attorney stated that Ms. Hatley was the only juror to that point who had said she did not know if she could sign the form or when the trial court noted that Ms. Hatley was very hesitant in her responses to the State. Because an appellant may not change his grounds for objection on appeal, this point is not preserved on appeal. *Gilland* v. *State,* 318 Ark. 72, 883 S.W.2d 474 (1994). We do not address arguments made for the first time on appeal. *Allen* v. *State,* 324 Ark. 1, 918 S.W.2d 699 (1996).

## 2. Victim-Impact Evidence

Wooten next argues that the trial court erred in allowing the state to use victim-impact evidence in the State's initial presentation during the penalty phase rather than as rebuttal to any mitigating evidence offered by Wooten.

During its initial presentation of evidence in the sentencing phase of the trial, the State introduced victim-impact testimony from David LaSalle's wife. Prior to the beginning of the sentencing phase, Wooten asserted that under *Payne* v. *Tennessee*, 501 U.S. 808 (1991), victim-impact evidence could only be admitted to counteract or rebut mitigating evidence offered by the defendant. Wooten contended that the State could not present the evidence during its initial presentation in the sentencing phase. The trial court concluded that the General Assembly had authorized the use of victim-impact testimony and that *Payne* did not clearly provide that victim-impact testimony was limited to rebut mitigating evidence. On appeal, Wooten again argues that victim-impact evidence may be offered only to rebut certain evidence in mitigation offered by the defendant.

■ The basic rule of statutory construction is to give effect to the intent of the legislature, and when a statute is clear, it is given its plain meaning. *Hercules Inc.* v. *Pledger*, 319 Ark. 702, 894 S.W.2d 576 (1995); *see also State* v. *McLeod*, 318 Ark. 781, 888 S.W.2d 639 (1994). The legislative intent is gathered from the plain meaning of the language used. *Id.* Arkansas Code Annotated § 5-4-602(4) (Repl. 1993), *Capital murder charge — Trial procedure*, provides in part:

> (4) In determining sentence, evidence may be presented to the jury as to any matters relating to aggravating circumstances enumerated in § 5-4-604, any mitigating circumstances, or any other matter relevant to punishment, including, but not limited to, victim impact evidence, provided that the defendant and the state are accorded an opportunity to rebut such evidence.

We initially note that the statute clearly provides that evidence may be presented as to any matter relevant to punishment, including, but not limited to, victim-impact evidence. The statute does require that the defendant and the State be accorded an opportunity to rebut such evidence; however, the statute does not provide that

such evidence be limited to rebuttal.

In further support of his argument, Wooten relies on Section 2 of Act 1089 of 1993. Act 1089 enacted § 5-4-602(4), and section 2 provided:

> It is the express intention of this act to permit the prosecution to introduce victim impact evidence as permitted by the United States Supreme Court in *Payne* v. *Tennessee*, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

Wooten argues in essence that the General Assembly intended to restrict the use of victim-impact evidence to those limits imposed by *Payne* and that *Payne* only permits victim-impact evidence to rebut evidence of mitigation offered by the defendant.

■ We do not agree with Wooten's reading of the statute or of *Payne*. Wooten's interpretation of *Payne* is too narrow; he concludes that the Supreme Court's reference to "counteracting" mandates that victim-impact evidence be limited to the rebuttal phase of sentencing. Granted, the Court in *Payne* stated that "the State has a legitimate interest in *counteracting* the mitigating evidence which the defendant is entitled to put in." (Emphasis supplied.) However, the Court in the same paragraph stated that "[w]e are now of the view that a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant." *Payne*, 501 U.S. at 825. The Court went on to hold as follows:

> We thus hold that if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no *per se* bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed.

*Payne*, 501 U.S. at 827.

### 3. Identification Testimony

For his final argument, Wooten contends that the trial court erred in denying his motion to exclude evidence of his identification in a lineup because the lineup was unduly suggestive in viola-

tion ·of the Fifth and Fourteenth Amendments to the United States Constitution. Prior to trial, Wooten moved to suppress testimony regarding both his pretrial and in-court identification because the pretrial physical lineup procedures were unduly suggestive, and any subsequent in-court identification would be tainted by the pretrial procedures. On appeal, Wooten submits that the trial court erred in failing to suppress the evidence of the lineup and the identification testimony of Henry Porter and Molly Porter.

We will not reverse a trial court's ruling on the admissibility of an in-court identification unless the ruling is clearly erroneous under the totality of the circumstances. *Prowell v. State*, 324 Ark. 335, 921 S.W.2d 585 (1996). In determining whether an in-court identification is admissible, we look first at whether the pretrial identification procedure was unnecessarily suggestive or otherwise constitutionally suspect; it is the appellant's burden to show that the pretrial identification procedure was suspect. *Id*. A pretrial identification violates the Due Process Clause when there are suggestive elements in the identification procedure that make it all but inevitable that the victim will identify one person as the culprit. *Id*.

However, even when the process is impermissibly suggestive, the trial court may determine that under the totality of the circumstances the identification was sufficiently reliable for the matter to be submitted to the jury, and then it is for the jury to decide the weight the identification testimony should be given. *Id*. In determining reliability, the following factors are considered: (1) the prior opportunity of the witness to observe the alleged act; (2) the accuracy of the prior description of the accused; (3) any identification of another person prior to the pretrial identification procedure; (4) the level of certainty demonstrated at the confrontation; (5) the failure of the witness to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the pretrial identification procedure. *Id*.

Both Henry Porter and Molly Porter selected Wooten from a lineup conducted on the day of the incident and identified him as the assailant at trial. At the suppression hearing, Johnny Casto of the Pope County Sheriff's Department testified that Henry Porter initially described the assailant as being in his late twenties, five feet, seven inches tall, approximately 135 to 140 pounds, with sandy blond hair. Mr. Porter did not state that the assailant had either a mustache or beard. Pope County Sheriff Jay Winters testified that

Molly Porter described the assailant as being in his late twenties with light brown hair, 5'6" tall, and approximately 140 to 150 pounds. She also did not mention a beard or mustache. Appellant Wooten contends that the lineup conducted was overly suggestive because, based upon the description provided by the two witnesses, it was inevitable that he would be picked.

Wooten submits that he was the shortest person in the lineup by three to four inches. He asserts that the person closest to his height had gray hair and a mustache, that two other persons depicted in the lineup had facial hair, and that two persons appeared to be in their late teens or early twenties. The trial court concluded that he did not see "much disparity at all" between the individuals placed in the lineup and "there's nothing to the Court that appears to be suggestive." We cannot say that the trial court's ruling was clearly erroneous; there is simply nothing in the lineup that would direct a witness toward Wooten as the assailant. *See King v. State,* 323 Ark. 558, 916 S.W.2d 725 (1996). Further, an accused is not entitled to have a lineup in which all the participants are identical. *Perry v. State,* 277 Ark. 357, 642 S.W.2d 865 (1982).

Moreover, even when the pretrial process is impermissibly suggestive, the trial court may determine that under the totality of the circumstances the identification was sufficiently reliable for the matter to be submitted to the jury. *See Prowell v. State, supra.* On appeal, Wooten submits that the in-court identification was not sufficiently reliable because there was no evidence presented as to the witnesses' degree of attention or their opportunity to view the assailant during the crime.

However, Wooten did not obtain a ruling on his motion to suppress the in-court identification; therefore, this point is not preserved on appeal. At the conclusion of the suppression hearing, the trial court stated that "with respect to your motion to suppress evidence of in-court identification, it's a little premature." Counsel for Wooten stated that, given the court's ruling on his motion to suppress the lineup identification, he agreed with the trial court. Wooten did not object at trial when Henry Porter and Molly Porter identified him as the assailant. We have repeatedly stated that failure to obtain a ruling on an issue at the trial court level, including a constitutional issue, precludes review of the issue on appeal. *Laudan v. State,* 322 Ark. 58, 907 S.W.2d 131 (1995); *Bowen v. State,* 322 Ark. 483, 911 S.W.2d 555 (1995).

*Ark. Sup. Ct. R. 4-3(h)*

The record has been examined in accordance with Arkansas Supreme Court Rule 4-3(h), and there were no rulings adverse to Wooten which constituted prejudicial error.

Affirmed.