Dexter ROSEBY *v.* STATE of Arkansas

CR 97-122 953 S.W.2d 32

Supreme Court of Arkansas
Opinion delivered September 18, 1997

557

*Willard Proctor, Jr.,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Kelly K. Hill,* Deputy Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. The appellant, Dexter Roseby, was sentenced to life imprisonment without parole for the capital murder of Lee Andrew Byrd, Jr. Roseby raises four arguments on appeal. Finding no reversible error, we affirm.

On January 8, 1996, Officer Timothy Hobbs discovered the body of Lee Andrew Byrd, Jr., in the snow-covered woods behind the Pilgrim Rest Baptist Church in Woodson. Byrd had been shot once in the back of his left thigh, and bled to death. A jury found Dexter Roseby guilty of the capital murder of Byrd under Ark. Code Ann. § 5-10-101(a)(4) (Supp. 1995), which states that a person commits capital murder if he or she kills another person with a "premeditated and deliberate purpose." Because the State did not seek the death penalty, the court imposed the sentence of life imprisonment without parole. From his judgment and commitment order, Roseby filed a timely notice of appeal.

### I. Sufficiency of the Evidence

■ Roseby challenges the sufficiency of the evidence to support his conviction of capital murder. When an appellant challenges the sufficiency of the evidence, we address the issue prior to all others. *Kemp v. State*, 324 Ark. 178, 919 S.W.2d 943 (1996); *cert. denied*, 117 S. Ct. 436 (1996); *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702 (1996), *cert. denied*, 117 S.Ct. 246 (1996). On appeal, Roseby claims that his conviction must be reversed because the State failed to present sufficient evidence that he killed Lee Andrew Byrd with a "premeditated and deliberate purpose" as required by Ark. Code Ann. § 5-10-101(a)(4) (Supp. 1995).

■ We have held on numerous occasions that Ark. R. Crim. P. 33.1 requires a criminal defendant to make a specific motion for a directed verdict that apprises the trial court of which element of the crime the State has failed to prove. *Travis v. State*, 328 Ark. 442, 944 S.W.2d 96 (1997); *Dixon v. State*, 327 Ark. 105, 937 S.W.2d 642 (1997); *Webb v. State*, 327 Ark. 51, 938 S.W.2d 806 (1997); *Dulaney v. State*, 327 Ark. 30, 937 S.W.2d 162 (1997). Specifically, in *Webb* we refused to consider the appellant's argument that the State failed to prove that he killed the victims in a premeditated and deliberate manner because the appellant failed to raise this issue in his motion for directed verdict. *Webb, supra.*

■ At the conclusion of the State's case, Roseby made a motion for a directed verdict stating that the State had failed to

present direct evidence linking Roseby to the crime. Roseby did not mention in his motion that the State failed to prove the "premeditated and deliberate" element of capital murder. Hence, we conclude that Roseby has not preserved this issue for appeal.

## II. Motion for a Continuance

For his second argument, Roseby contends that the trial court erred when it denied his request for a continuance so that he could obtain another attorney. It is well settled that the right to counsel of one's choice is not absolute and may not be used to frustrate the inherent power of the court to command an orderly, efficient, and effective administration of justice. *Edwards v. State*, 321 Ark. 610, 906 S.W.2d 310 (1995); *Leggins v. State*, 271 Ark. 616, 609 S.W.2d 76 (1980). Hence, it is within the trial court's discretion to grant a continuance so that a criminal defendant may obtain a new attorney, and this decision will not be reversed absent an abuse of discretion. *Edwards, supra; Cooper v. State*, 317 Ark. 485, 879 S.W.2d 405 (1994). In *Edwards*, we further explained that in making this determination, the trial court may consider the following factors: 1) the reasons for the change, 2) whether other counsel has already been identified, 3) whether the defendant has acted diligently in seeking the change, and 4) whether the denial is likely to result in any prejudice to defendant. *Edwards, supra.*

In this case, Roseby's attorney announced on the morning the trial was to begin that his client wanted him to withdraw from the case so that he could obtain another attorney. Roseby then explained to the judge that he wanted a continuance because he and his attorney were not prepared for trial. Roseby further alleged that his attorney rushed him into a decision regarding his trial, and that he did not adequately discuss the case with him. Roseby, however, did not disclose whether he had already obtained substitute counsel.

The trial court found that Roseby's attorney was competent and had diligently filed several pretrial motions on Roseby's behalf. Moreover, the judge was greatly influenced by the fact that Roseby's attorney had been working for him for approxi-

mately eight or nine months, yet Roseby waited until the day of the trial to ask for new attorney. Based on these facts, we cannot say that the trial court abused its discretion when it denied Roseby's motion. Accordingly, we also affirm on this point.

### III. Use of Peremptory Challenges

■ Next, Roseby argues that the State used its peremptory challenges at trial to exclude African-Americans from the jury in violation of the Equal Protection Clause of the Fourteenth Amendment as construed in *Batson v. Kentucky*, 476 U.S. 79 (1986). In making this determination, we apply the following three-step analysis. First, the defendant must make a *prima facie* case that racial discrimination is the basis for excluding the juror. Second, if the court concludes that the defendant has made this showing, the State must provide a racially neutral explanation for striking the juror. The trial court must then determine from all the relevant circumstances the sufficiency of the offered explanation. Finally, if the court is not satisfied with the State's explanation, it must conduct a sensitive inquiry, and the defendant must explain how the State's racially neutral explanation is merely a pretext. *See, Sonny v. Balch Motor Co.*, 328 Ark. 321, 944 S.W.2d 87 (1997); *Wooten v. State*, 325 Ark. 510, 931 S.W.2d 408 (1996), *cert. denied*, 117 S. Ct. 979 (1997).

■ As the United States Supreme Court recently noted in *Purkett v. Elem.*, 514 U.S. 765 (1995), "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Moreover, we accord great deference to the trial court's determination of whether the peremptory strike was exercised in a discriminatory manner, and we reverse that decision only if it is clearly against the preponderance of the evidence. *Sonny, supra.*

According to the above analysis, we must first determine whether Roseby established a *prima facie* case of discrimination. After asking a juror a couple of questions, the State asked the judge to excuse the juror, and the following colloquy occurred:

> ROSEBY: I understand the State has struck an African-American Juror who from — after asking basically one question.

There's a question in my mind as to what they could've [sic] gleaned from — his demeanor was similar to that of the other witnesses. There was nothing about what he said, so we would ask that he be reseated under *Batson v. Kentucky* because there doesn't seem to be any sort of legitimate reason for striking him, other than his race.

STATE: Your honor, he failed to make eye contact. He was unresponsive to my questions. I've sat other African-Americans on the panel and did not strike those individuals. There's still African-American potential jurors out in the gallery.

COURT: Well, I think out of the eleven different remaining, there's three black folks on the jury. So I just don't think there's any systematic exclusion. I don't think that the State should have to respond to that at this point. If I see that there is something systematic, I'll require it then.

On appeal, the State argues that the preliminary inquiry of whether Roseby made a *prima facie* case is not moot because the State proceeded to offer a racially neutral explanation instead of addressing whether a *prima facie* case had been established. We have previously held that the *prima facie* determination is moot on appeal when the trial court skipped this step and ruled upon the second issue of whether the State had provided a racially neutral explanation. *Wooten, supra; Cleveland v. State*, 326 Ark. 46, 930 S.W.2d 316 (1996); *Prowell v. State*, 324 Ark. 335, 921 S.W.2d 585 (1996). However, it is the court's failure to render a ruling on the *prima facie* determination, and not the State's decision to offer a racially neutral explanation instead of attacking the establishment of a *prima facie* case, that renders the issue moot. *See Wooten, supra; Cleveland, supra; Prowell, supra.*

In this case, the State offered a racially neutral explanation instead of attacking the defendant's *prima facie* case. However, unlike *Wooten, Cleveland,* and *Prowell,* we find that the trial court ruled on the *prima facie* issue when it declared that there was no evidence of systematic discrimination. Hence, the issue is not moot, and we must determine if the trial court's ruling in this regard is clearly against the preponderance of the evidence.

A *prima facie* case of the discriminatory use of peremptory challenges may be established by: 1) showing that the totality

of the relevant facts gave rise to an inference of discriminatory purpose, 2) demonstrating total or seriously disproportional exclusion of African-Americans from the jury, or 3) showing a pattern of strikes, questions, or statements by a prosecutor during voir dire. *Bragg, supra*; *Wooten, supra*; *Mitchell v. State*, 323 Ark. 116, 913 S.W.2d 264 (1996).

 In this case, three of the eleven seated jurors were African-American, and there were several other African-Americans remaining in the gallery. Although this is not the end to our inquiry, we have previously held that this is a very persuasive challenge to the establishment of a *prima facie* case. *Bragg, supra*; *Cleveland, supra*. Additionally, Roseby did not present any evidence that the prosecutor made racial statements or asked racial questions. Finally, Roseby did not present any other evidence or factors that might have allowed the court to infer that the State was using its peremptory challenges in a discriminatory manner. Based on these facts, we cannot say that the trial court's ruling that Roseby failed to establish a *prima facie* case was clearly against a preponderance of the evidence. Accordingly, we affirm on this point.

## IV. Hearsay

Finally, Roseby argues that the trial court violated Ark. R. Evid. 613 when it allowed the State to impeach Lynette Daniels with questions about a prior unsworn statement. During the trial, the State called Lynette Daniels to the stand and asked her a series of questions regarding her contact with the defendant in early January. Daniels explained that she saw Roseby at a liquor store early that afternoon, and that he drove her to her grandmother's home which was next door to the victim's house. Daniels then denied seeing Roseby approach the victim's home, and denied that he made any statements to her about the victim. At this point, Daniels admitted that several people had threatened to kill her if she testified in court. The State then asked Daniels if she recalled giving an unsworn statement to Detective Ward on January 11, 1996, and Daniels answered in the affirmative. When the State attempted to ask Daniels about statements she made to Detective Ward, Roseby promptly objected claiming that the State could not

impeach her because she had not yet made an inconsistent statement.

The State then asked Daniels to review her unsworn statement to refresh her memory. Daniels replied, "I don't remember telling him this because I was under the influence of drugs. I can't remember." Daniels then reviewed the statement and again declared, "I just don't remember telling him all this; I don't." The State then asked Daniels the following series of questions over Roseby's objections:

> STATE: Did you tell Detective Ward that Dexter told you he —
> DANIELS: I don't remember.
> STATE: — was looking for Junior?[1]
> DANIELS: I don't remember. I don't remember.
> STATE: Did you tell Detective Ward that they went to Junior's house looking for him?
> DANIELS: I don't remember telling him that either.
> . . . .
> STATE: Did you tell Detective Ward that they said they were going to kill him?
> DANIELS: No, I don't remember telling him that.

On appeal, Roseby claims that the above testimony was allowed into evidence in violation of Ark. R. Evid. 613(b) which states that:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

We find that this argument fails for several reasons.

First, Roseby argues that the State should not have been allowed to impeach Daniels with her unsworn statement to Detective Ward because she declared that she could not remember instead of directly contradicting her prior statements. We have

---

[1] The victim, Lee Andrew Byrd, Jr., was also known as "Junior" and "Junior Byrd."

previously explained that an "inconsistent statement" as used in Rule 613, is not limited to those instances in which diametrically opposite assertions have been made. *Truck Ctr. v. Autrey*, 310 Ark. 260, 836 S.W.2d 359 (1992); *Flynn v. McIlroy Bank & Trust Co.*, 287 Ark. 190, 697 S.W.2d 114 (1985). Rather, we have adopted Judge Weinstein's view that a witness's prior statement is admissible whenever a reasonable person could infer on comparing the whole effect of the two statements that they have been produced by inconsistent beliefs. *Truck, supra; Flynn, supra.*

Of particular applicability to this case is our holding in *Chisum v. State*, 273 Ark. 1, 616 S.W.2d 728 (1981). As in this case, in *Chisum* a hostile witness, who was the defendant's sister, claimed that she had forgotten what she had told the police in a prior unsworn statement. *Id.* The State then allowed the witness to review her prior statement in an effort to refresh her recollection. *Id.* After reviewing the statement, the witness again claimed that she did not recall any of her prior statements implicating the defendant. *Id.* We found her statements that she "forgot" were sufficiently inconsistent to allow the introduction of her prior sworn statement. We have reached this same conclusion in numerous cases where a witness claimed to have forgotten a prior statement that is unfavorable to the defendant. *Hughey v. State*, 310 Ark. 721, 840 S.W.2d 183 (1992); *Flynn, supra; Humpolak v. State*, 175 Ark. 786, 300 S.W.2d 426 (1927); *Billings v. State*, 52 Ark. 303, 12 S.W. 574 (1889).

As in *Chisum*, Daniels was the defendant's relative and she was clearly hostile to the State. In addition, Daniels claimed that she had been threatened by several people not to testify. In *Hughey, supra*, we clarified that considerable discretion must be given to the trial court when determining where to draw the line in the impeachment of a hostile witness. In light of these facts, we cannot say that the trial court abused its discretion when it found that Daniels's assertions that she could not recall her statements to Detective Ward were sufficiently inconsistent to allow her to be impeached with her prior statement under Rule 613(b).

Additionally, we find no error because the trial court properly instructed the jury as follows:

> Evidence that a witness previously made a statement which is inconsistent with his testimony at trial, may be considered by you for the purpose of judging the credibility of the witness but may not be considered by you as evidence of the truth of the matters set forth in that statement.

During deliberations, the jury sent a note to the judge asking if they could consider the statements Lynette Daniels made to Officer Ward, and the trial court repeated its prior instruction. Thus, the jury was given the proper cautionary instruction not once, but twice, and we can assume that the jury heeded the court's admonishment. *See Hughey, supra.*

Moreover, we do not agree with Roseby's assertion that our decision in *Roberts v. State*, 278 Ark. 550, 648 S.W.2d 44 (1983), is controlling. In *Roberts*, an eyewitness gave an unsworn statement to the police implicating the defendant in the murder of the defendant's wife. *Id.* The witness later gave the police two additional statements in which he admitted that his original statement was untrue. *Id.* At trial, the State called the witness to the stand and impeached him with his initial statement that implicated the defendant. *Id.* We held that such impeachment was "a mere subterfuge" for the State's true intention of introducing the hearsay statement as substantive evidence of the defendant's guilt. *Id.* We also found that the limiting instruction to the jury directing them to consider the statements for impeachment only did not cure this error. *Id.*

In this case, there was no evidence that the State knew that Daniels would contradict her earlier statement to Detective Ward. Thus, we do not find that the State called Daniels for the sole purpose of introducing inadmissible hearsay under the guise of impeachment. Thus, as with Roseby's other three arguments on appeal, we find no reversible error. .

*V. Arkansas Supreme Court Rule 4-3(h)*

In accordance with Ark. S. Ct. R. 4-3(h), the record has been reviewed for rulings decided adversely to Roseby but not argued on appeal, and no reversible errors were found.

Affirmed.