Walter Ray MacKINTRUSH *v.* STATE of Arkansas

CA CR 97-145 959 S.W.2d 404

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered December 22, 1997

*McCullough Law Firm*, by: *R.S. McCullough*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kelly Terry*, Asst. Att'y Gen., for appellee.

JOHN F. STROUD, JR., Judge. Ogretta MacKintrush, wife of Walter MacKintrush, died at home at approximately 3:00 a.m. on October 17, 1994. Mr. MacKintrush, who had called 911 to report that his wife was not breathing, was subsequently charged with first-degree murder. A trial was held in October 1995, but the jury deadlocked 11-1 and a mistrial was declared. A second trial was continued when a witness did not appear and was reset for July 30, 1996. At the trial which began on that date, Mr. MacKintrush was found guilty of murder in the second degree and he was sentenced to twenty years in the Arkansas Department of Correction.

Mr. MacKintrush appeals the conviction, raising five points of error. He contends that the trial court erred when it 1) denied him relief for alleged discovery violations by the State, 2) refused to grant a writ of mandamus to compel the sheriff to serve a subpoena, 3) allowed the medical examiner to testify outside his area of qualification, 4) permitted the State to use a peremptory challenge against a potential black juror, and 5) denied his mistrial motion based upon the racial make-up of the jury panel. Mr. MacKintrush filed a motion to transfer his appeal to the Arkansas Supreme Court. Although we determined that none of his

asserted reasons supported the request, we recommended certification under Ark. Sup. Ct. R. 1-2(a)(5) because the case involved a petition for mandamus directed to "state, county, or municipal officials." Certification was refused on June 9, 1997. We affirm the conviction, addressing the points as they were presented by appellant.

*I. The trial court erred by not granting relief on the fact of the State's failure to provide witness information and in particular, exculpatory information.*

Rule 19.2 of the Arkansas Rules of Criminal Procedure imposes upon a party a continuing duty to disclose, after compliance with the rules of discovery or a court order, if it discovers additional material or information comprehended by a previous request to disclose. Rule 17.1(d) requires a prosecutor to disclose promptly any material or information tending to negate the guilt of a defendant or tending to reduce his punishment. Under Rule 19.7, the trial court may order any of four sanctions against a party that fails to comply with a discovery rule or order: the discovery or inspection of materials not previously disclosed, a continuance, prohibition from introducing in evidence the undisclosed material, or such other order as the court deems proper.

In the instant case, appellant filed a motion for discovery before the first trial. The State responded with an open file policy, and the trial court ordered that discovery be supplied by June 12, 1995. Appellant complains on appeal, as he did during his trial, that the State violated its discovery obligations by failing to inform him of the existence of statements by Cynthia Marks and Jewel Williams.

Cynthia Marks's statement was that the victim had told her that appellant had filed for divorce previously, in the spring of 1994; that appellant thought the victim was having an affair; that he would kill her if he found it to be so, and no one would know how; and that appellant was "crazy." Ms. Williams's statement was that about two weeks before the murder the victim had said that appellant was going to divorce her, and that she had come to work a few days before her death with a cut inside her bottom lip

and with scratches and bruises on her neck resembling a hand print.

We address discovery of the two statements separately, beginning with that of Ms. Marks.

### Statement of Cynthia Marks

When the State called Ms. Marks to testify, appellant objected on the basis that the State had not disclosed her as a witness. The prosecutor responded that she had been disclosed at the current trial and at the previous one, where she had been introduced but had not testified. The State was unable at that time to show that the defense had been notified, withdrew Ms. Marks as a witness, and stated that it would call her later. The trial court conducted hearings on the issue of disclosure, which we review below. Finding that the State had notified defense counsel of Ms. Marks's statement, the trial court ruled that she could testify after defense counsel visited with her. The State, however, later decided that it would not call Ms. Marks, and she never testified at trial.

At a hearing the day after his objection to Ms. Marks's testimony, defense counsel reiterated his position that her statement was a surprise. The prosecutor stated that her name had not been in the file originally supplied under the open file policy but had appeared on papers of "names provided" and that the prosecutor's policy was always to call about a new witness and leave a message. Defense counsel responded that the name had not been in the file and that no message had been left about Ms. Marks. The court told the prosecutor that until she could show "something that shows that you have had it in your file or that you notified him of it," the witness could not testify. The court noted that Ms. Marks appeared to be a major witness and announced that it would take a short recess to research the matter of allowing her to testify after defense counsel had a chance to visit with her.

When the proceedings continued, the prosecutor produced a photocopy of a June 19, 1995, fax that summarized Ms. Marks's testimony. The prosecutor explained that the assistant prosecutor had found it in his file, that the assistant's file contained only cop-

ies of her file, and that she had overlooked the photocopy.
Defense counsel stated that he had never seen it before, nor had he
seen the statement of Jewell Williams which was attached as
another page. The prosecutor stated that the State did not plan to
call Ms. Williams. When the court asked defense counsel when
he had reviewed the State's file, defense counsel said that his inves-
tigator had reviewed it after June 19.

The trial court accepted into evidence Exhibit No. 2, which
is a photocopy of pages 2 and 3 of a fax dated June 19, 1995. At
the top of both pages a line of print reads, "LRPD DETECTIVE
DIV FAX NO. 5013993448." One page summarizes Ms. Wil-
liams's statement and the other summarizes the statement of
Cynthia Marks.

After taking a recess to examine the evidence, the rules of
criminal procedure, and case law, the court issued the following
ruling on allowing Ms. Marks to testify:

> According to the photocopies of the statements . . . dated
> June 18th, '95, 10:45, this states the existence of this witness,
> Marks, and a general statement of what she was to testify to. This
> would have been after a Court Order closing discovery some six
> days before. A fax mark on both of these two pages . . . shows
> June 19th of '95, although it doesn't directly say it's faxed to the
> prosecutor's office, that is the indication of it. So that means
> under 19.2 the State had a duty to disclose this. The State has an
> open file policy. And the Defense affirmatively states that after
> that date they did review or a member of their staff . . . reviewed
> that file, which means there was opportunity there . . . .
>
> Now, Rule 19.7 says that if there was a violation of this
> Order, which the Court is not finding, . . . the Court has about
> four different things that it can do . . . . I think that the proper
> order in this case would be to allow the defendant an opportunity
> to interview this witness before we go further. Therefore, I'm
> going to recess this jury until 9:15 in the morning to give counsel
> an opportunity to do that, and order the State to make this wit-
> ness available to them in the interim.

The trial court has broad discretion in matters pertain-
ing to discovery, which will not be second-guessed by the appel-

late court absent an abuse of discretion that is prejudicial to the appealing party. *Banks v. Jackson,* 312 Ark. 232, 848 S.W.2d 408 (1993). It is incumbent upon appellant to demonstrate actual prejudice resulting from an asserted discovery violation. *Johninson v. State,* 317 Ark. 431, 878 S.W.2d 727 (1994). Even where a discovery violation has occurred, we will not reverse if the error is harmless. *See Mosley v. State,* 323 Ark. 244, 914 S.W.2d 731.

▌ Here, because Ms. Marks never testified, appellant was not prejudiced by any alleged discovery violations regarding her statement. Additionally, her statement was inculpatory because it referred to appellant's alleged threat to kill his wife. Thus, the State had no obligation to disclose it as an exculpatory statement under Arkansas Rule of Criminal Procedure 17.1. Even if we were to find that a discovery violation existed, which we do not, the error was clearly harmless. We find no error in the trial court's refusal to grant sanctions regarding this matter.

### Statement of Jewell Williams

The trial court heard testimony by the prosecutor, Terry Raney-Ball, and defense counsel, R. S. McCullough, regarding discovery of the statement of Jewell Williams. Mr. McCullough asked the court to dismiss the charges, declare a mistrial, or grant a continuance because of the State's failure to inform him about her statement. He based his motion on Arkansas Rule of Criminal Procedure 17.1, contending that the statement was exculpatory and that the State was therefore obligated to inform him of its existence. He argued that the statement could implicate someone else because, several days before her death, appellant's wife had injuries and she did not attribute them to appellant. Ms. Ball asserted that the State had faxed Ms. Jewell's statement to defense counsel on March 5, 1996. She produced a fax cover sheet and the written statement, which was introduced into evidence as Exhibit No. 15. A heading on the cover sheet reads, "Prosecuting Attorney's Office," and the word "Faxed" appears upon the page. The sheet contains the signature of assistant prosecutor John Johnson, the date 3/5/96, and the following handwritten remarks:

R. S.

I'm faxing you the name and number of a witness that we may call. I believe you were given this name before, but I wanted to be sure. Call if you have any questions.

Jewell Williams

376-4694

The exhibit's second page, a summary of Jewel Williams's statement, is identical to that previously introduced in Exhibit No. 2 and discussed above.

Mr. McCullough noted that the cover sheet "doesn't show a machine fax sign or anything." The prosecutor again denied that the State had failed to provide the statement to defense counsel. She also said that the State did not plan to use the statement and that she had made that decision because Ms. Williams was living with appellant, the statement was too prejudicial, and there was "not enough link." The trial court found that defense counsel possessed the document before trial and denied appellant's motion for a mistrial, dismissal of charges, or a continuance.

■ ■ A trial court's findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *Shibley v. State*, 324 Ark. 212, 920 S.W.2d 10 (1996). Here, the trial court conducted lengthy, thorough hearings on the alleged discovery violation before finding that defense counsel had received the document before trial. Furthermore, the key in determining if a reversible discovery violation exists is whether the appellant was prejudiced by the prosecutor's failure to disclose. *Mosley v. State*, 323 Ark. 244, 914 S.W.2d 731 (1996). We cannot say that the trial court clearly erred.

II. *The trial court erred by not granting mandamus against the sheriff for failure to serve defense witness subpoena.*

At appellant's request, the Pulaski County Circuit Clerk issued a subpoena for a witness whose address was 109 Chestnut in Hot Springs, which is in Garland County. The Pulaski County Sheriff refused to serve the subpoena because the residence was outside of Pulaski County. Appellant then petitioned the trial court to issue a writ of mandamus to compel the sheriff to serve the subpoena. The court refused to do so.

Appellant argues that Arkansas Code Annotated § 16-43-208 (Repl. 1994) imposes upon the sheriff a duty to serve subpoenas authorized by the statute. An examination of the statute shows it to be silent regarding service of subpoenas. The statute addresses only a) the duty of the clerk of the court to issue subpoenas, b) the number of witnesses subpoenaed at the expense of the county, c) a party's right to recall subpoenas, and d) the number of character witnesses to be subpoenaed at the expense of the county. Ark. Code Ann. § 16-43-208 (Repl. 1994).

■ ■ The standard of review upon denial of a petition for a writ of mandamus is whether the trial court abused its discretion. *State v. Sheriff of Lafayette County*, 292 Ark. 523, 731 S.W.2d 207 (1987). Mandamus is not a writ of right but is within the discretion of the court, and the party applying for it must show a specific legal right and the absence of any other adequate remedy. *Hicks v. Gravett*, 312 Ark. 407, 849 S.W.2d 946 (1993). Here, appellant has failed in his effort to show his legal right to have the Pulaski County Sheriff serve a subpoena outside of the county. Additionally, another adequate remedy existed in that appellant could have requested service through the Garland County Sheriff or through a private process server. We find no abuse of discretion in the trial court's refusal to issue the writ of mandamus.

### III. The trial court erred by allowing the medical examiner to testify outside his area of qualification.

The trial court accepted State's witness Dr. Charles Paul Kokes as an expert in forensic pathology. Appellant objected when Dr. Kokes, the medical examiner who performed the victim's autopsy, was asked to state his conclusion as to how the victim died. Out of the hearing of the jury, the State said that Dr. Kokes would testify that the victim died of strangulation. Appellant contended that such testimony was beyond the expertise of Dr. Kokes, who had been qualified as a forensic pathologist rather than a reconstructionist; therefore, he argued, Dr. Kokes could testify only that the manner of death was asphyxiation, and not that the asphyxiation resulted from strangulation. He also contended that the testimony should not be allowed because it reached the ultimate issue in the case.

The trial court allowed testimony within the bounds of a legal degree of certainty within the field of expertise, and it overruled appellant's objection as to reaching the ultimate issue. Dr. Kokes subsequently testified within those bounds that the cause of death was strangulation. He based his opinion upon his observation of petechial hemorrhages on the surfaces of the victim's eyes and eyelids, hemorrhage in her "cricoid thyroid muscle," and hemorrhage behind both horns of her thyroid. He stated that petechial hemorrhages on eyes and eyelids are common when force is applied to the neck, and that internal hemorrhages such as those he had found are caused by external pressure to the neck. Finally, he voiced his opinion, based upon the autopsy he had performed, that there was no other reasonable explanation for her cause of death.

It is well settled that the determination of the qualifications of an expert witness lie within the discretion of the trial court, and the trial court's decision will not be reversed unless that discretion has been abused. *Suggs v. State,* 322 Ark. 40, 907 S.W.2d 124 (1995). Arkansas Rule of Evidence 702 allows a witness qualified as an expert to testify, in the form of an opinion or otherwise, to scientific, technical, or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue.

In the present case, an expert in forensic pathology based his opinion upon injuries he had observed while performing the autopsy on appellant's wife, and his opinion helped determine how she died. Thus, his testimony about the cause of death was proper under Rule 702 of our rules of evidence. We find no abuse of discretion by the trial court in permitting Dr. Kokes to express his opinion that the victim died by strangulation.

*IV. The trial court erred by not granting appellant's* Batson *motion regarding venireperson Orji.*

The State used its first two peremptory strikes against a black male and a white female, and its third strike against Stephen Orji, a black male. Appellant, who is an African-American, objected that the strike was a racial one in violation of *Batson v. Kentucky,* 476 U.S. 79 (1986).

██ ██ In *Batson* the United States Supreme Court held that the Equal Protection Clause of the United States Constitution forbids a prosecutor in a criminal case to use peremptory strikes to exclude jurors solely on the basis of race. *Sonny v. Balch Motor Co.*, 328 Ark. 321, 944 S.W.2d 87 (1997). *Batson* was somewhat refined by *Purkett v. Elem*, 514 U.S. 765 (1995), which reads in part as follows:

> Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination. The second step of this process does not demand an explanation that is persuasive, or even plausible. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. *Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.*" *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct., at 1866 (plurality opinion); *id.*, at 374 111 S.Ct. at 1874 (O'CONNOR, J., concurring in judgment).

514 U.S. at 767 (citations omitted) (emphasis added). The standard of review for reversal of a trial court's *Batson* ruling is whether the trial court's findings are clearly against the preponderance of the evidence. *Prowell v. State*, 324 Ark. 335, 921 S.W.2d 585 (1996).

Appellant focuses upon the second step, which requires the State to come forward with a race-neutral reason for the strike. At trial, the prosecutor listed the following reasons for the strike: in a group of six jurors, only Mr. Orji did not shake his head "yes" or "no" when questioned; he was not frank with her, and she thought his answers perhaps to be evasive; and the assistant prosecutor informed her that the State had struck Mr. Orji on a previous panel for inappropriate answers about sitting in judgment of someone or about the issue of self-defense. The trial court noted that two of the nine jurors already selected were of African descent, that the State had exercised one peremptory strike against a Caucasian and two against people of African descent, and that

there remained on the panel another African-American to be called as a possible juror. The court ruled the State's response to be racially neutral and denied the *Batson* motion.

Appellant contends that the reasons offered by the State were the type that *Batson* says are lukewarm, seemingly benign reasons that could always be used, if permitted, to discriminatorily use the peremptory strike. Our dissenting colleague agrees with appellant's position and, as he did in *Bosquet v. State,* faults the trial court for failing to make a sensitive inquiry into the State's explanation. *Bosquet v. State,* 59 Ark. App. 54, 64, 953 S.W.2d 894, 900 (1997), (Griffen, J., dissenting), *rev. denied,* (Ark. Sup. Ct., December 4, 1997). A review of decisions regarding the trial court's duty to make such an inquiry is therefore appropriate.

The Arkansas Supreme Court initially interpreted *Batson* as requiring, in every instance, a sensitive inquiry into the direct and circumstantial evidence available to decide if the State had made an adequate explanation. *See Mitchell v. State,* 295 Ark. 341, 750 S.W.2d 936 (1988); *Ward v. State,* 293 Ark. 88, 733 S.W. 2d 728 (1987). Later, however, that requirement was modified as follows:

> We now hold that upon a showing by a defendant of circumstances which raise an inference that the prosecutor exercised one or more of his peremptory challenges to exclude venire persons from the jury on account of race, the burden then shifts to the state to establish that the peremptory strike(s) were for racially neutral reasons. The trial court shall then determine from all relevant circumstances the sufficiency of the racially neutral explanation. *If the state's explanation appears insufficient, the trial court must then conduct a sensitive inquiry into the basis for each of the challenges by the state.*

*Colbert v. State,* 304 Ark. 250, 255, 801 S.W.2d 643, 646 (1990) (emphasis added).

In recent years, the Arkansas Supreme Court has consistently held that no sensitive inquiry is required when the neutral explanation given by the State is sufficient. One year after the *Purkett* decision, our supreme court stated, "Only if the defendant makes a prima facie case and the State fails to give a racially neutral

reason for the challenge is the court required to conduct a sensitive inquiry." *Wooten v. State*, 325 Ark. 510, 514, 931 S.W.2d 408, 410 (1996) (quoting *Mitchell v. State*, 323 Ark. 116, 913 S.W.2d 264 (1996), *cert. denied*, 117 S. Ct. 979 (1997)). In a very recent *Batson* decision, our supreme court reiterated, *"If the trial court is not satisfied with the State's explanation, it must conduct a sensitive inquiry,* and the defendant must explain how the state's racially neutral explanation is merely a pretext." *Roseby v. State*, 329 Ark. 554, 560, 953 S.W.2d 32, 35 (emphasis added) (1997). The duty of the trial judge is explained as follows:

> These procedures have been well established in our case law and are consistent with the principles set forth in *Batson* through *Purkett*. When the party having the burden of moving forward declines to proceed further, the trial court decides whether a prima facie case has been made. If a prima facie case has been made, the court must require an explanation and then determine . . . whether the neutral explanations given are genuine or pretextual.

*Sonny v. Balch Motor Co.*, 328 Ark. 321, 328, 944 S.W.2d 87, 91 (1997).

Our own court recently applied the *Batson* doctrine in *Bosquet v. State*, 59 Ark. App. 54, 953 S.W.2d 894 (1997), *rev. denied*, (Ark. Sup. Ct., December 4, 1997), where we followed the cases discussed above and said:

> In *Purkett*, the Court restated the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.
>
> *Our courts have adhered to the guidelines prescribed by the Supreme Court and have developed specific procedures to be followed when considering a Batson challenge. Sonny v. Balch Motor Co., supra.* As was reiterated by the court in *Wooten v. State*, 325 Ark. 510, 931 S.W.2d 408 (1996), *cert. denied* 117 S. Ct. 979 (1997):
>
>> First, the defendant must make a prima facie case that racial discrimination is the basis of a juror challenge. In the event that the defendant makes a prima facie case, the State has the burden of showing that the challenge was not based upon race. Only if the defendant makes a prima facie case and the

> State fails to give a racially neutral reason for the challenge is the court required to conduct a sensitive inquiry.

*Id.* at 514, 931 S.W.2d at 410 (quoting *Mitchell v. State*, 323 Ark. 116, 913 S.W.2d 264 (1996)).

*Bosquet* at 58, 953 S.W.2d at 896-7 (emphasis added).

 The appellate court affords great deference to the trial court's exercise of discretion in determining discriminatory intent relating to the use of a peremptory strike, and we reverse only if it is clearly against a preponderance of the evidence. *Sonny v. Balch Motor Co.*, 328 Ark. at 329, 944 S.W.2d at 92. We emphasize, with all due respect to the dissenting judge, that we will not deviate from this standard of review. Nor are we at liberty to ignore the cases of the United States Supreme Court and the Arkansas Supreme Court, which clearly state that a sensitive inquiry is not a requirement in every *Batson* case. Our careful review of case law shows that once the trial court determines that explanations offered by the striking party are racially neutral, there simply is no requirement of a sensitive inquiry.

 Here, the trial court examined all relevant evidence and determined that the explanations offered by the State were racially neutral. *See Colbert*, 304 Ark. at 255, 801 S.W.2d at 646 (1990). There was no requirement, therefore, that the trial court undertake a sensitive inquiry. We find that the trial court's decision regarding racially-neutral explanations was not clearly against a preponderance of the evidence.

*V. The trial court erred by not granting a mistrial in regard to the racially disproportionate jury panel.*

During voir dire, appellant moved for a mistrial on the ground that the jury panel did not represent the racial make-up of Pulaski County, where the case was tried. He asserted that there were only five black persons in the panel of thirty-two. The trial court denied the motion, noting that the Arkansas Supreme Court has upheld the court's method of calling the jury panel at random from the voter registration.

 The trial court was correct. *See Lee v. State*, 327 Ark. 692, 699, 942 S.W.2d 231, 234 (1997). Furthermore, we also

note that there is no requirement that the jury actually chosen mirror the community and reflect the distinctive groups in the population. *Danzie v. State,* 326 Ark. 34, 42, 930 S.W.2d 310, 314 (1995).

Affirmed.

BIRD and CRABTREE, JJ., agree.

AREY and ROAF, JJ., concur.

GRIFFEN, J., dissents.

D. FRANKLIN AREY, III, Judge, concurring. I join with the majority opinion in its result. To the extent that the majority relies on *Colbert v. State,* 304 Ark. 250, 801 S.W.2d 643 (1990), I believe that it is on track. However, I believe that Judge Roaf correctly identifies an inconsistency in our interpretation of *Batson.* At some point, our supreme court should address the divergent cases identified by Judge Roaf.

ANDREE LAYTON ROAF, Judge, concurring. I agree wholeheartedly with the views expressed by the dissenting judge. However, I concur with the majority in affirming this conviction because I believe that we are bound to follow the precedents of our supreme court, if for no other reason than they may review, and reverse, any opinion handed down by this court. However, what that precedent is, or should be in this instance, warrants further discussion.

In *Colbert v. State,* 304 Ark. 250, 801 S.W.2d 643 (1990), the supreme court held for the first time that trial courts would no longer be required to conduct a "sensitive inquiry" in every case where a *Batson* challenge is raised and a prima facie case made. The court said that a sensitive inquiry would be required only where the State's racially neutral explanations "appear ed insufficient."

It may well be true that some race-neutral explanations will be so obviously nondiscriminatory as to require little inquiry by the trial court. It is equally true that other proffered explanations will be blatantly pretextual and will require little inquiry, sensitive or otherwise, to uncover the true discriminatory purposes behind

the strikes. However, in 1993, the supreme court further, and, I think inadvertently, undermined *Batson*, first in *Tucker v. State*, 313 Ark. 624, 855 S.W.2d 948 (1993), and later in *Franklin v. State*, 314 Ark. 329, 863 S.W.2d 268 (1993). The latter opinion contains the all-too-familiar and often-cited sentence, "Only if the defendant makes a *prima facie* case and the State *fails to give a racially neutral reason for the challenge* is the court required to conduct a sensitive inquiry." *Id.* at 338, 863 S.W.2d at 273 (emphasis added); *see, e.g., Wooten v. State*, 325 Ark. 510, 931 S.W.2d 408 (1996); *Prowell v. State*, 324 Ark. 335, 921 S.W.2d 585 (1996); *Bell v. State*, 324 Ark. 258, 920 S.W.2d 821 (1996); *Cooper v. State*, 324 Ark. 135, 919 S.W.2d 205 (1996); *Mitchell v. State*, 323 Ark. 116, 913 S.W.2d 264 (1996); *Heard v. State*, 322 Ark. 553, 910 S.W.2d 663 (1995); *Reams v. State*, 322 Ark. 336, 909 S.W.2d 324 (1995); *Sims v. State*, 320 Ark. 528, 900 S.W.2d 508 (1995); *Rockett v. State*, 318 Ark. 831, 890 S.W.2d 235 (1994); *Gilland v. State*, 318 Ark. 72, 883 S.W.2d 474 (1994); *Bosquet v. State*, 59 Ark. App. 54, 953 S.W.2d 894 (1997); *Hollowell v. State*, 59 Ark. App. 39, 953 S.W.2d 588 (1997); *Jones v. State*, 45 Ark. App. 28, 871 S.W.2d 403 (1994). As the concurring justices in *Colbert* pointed out in 1990, "Surely any prosecutor can offer neutral reasons." *Colbert, supra,* (Newbern, Dudley, Glaze, JJ., concurring). The trial court's obligation to conduct a sensitive inquiry was, at least for a time, virtually eliminated in 1993.

Certainly this was not a proper interpretation of *Batson* as shown by the United States Supreme Court's subsequent decision in *Purkett v. Elem*, 514 U.S. 765 (1995), which provides that:

> Under our Batson jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). *If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination.*

*Id.* at 767 (citations omitted) (emphasis added).

I am not unmindful that in recent cases, the supreme court has utilized only the pre-1993 language of *Colbert* in making the

*Batson* analysis. *See Lammers v. State*, 330 Ark. 324, 955 S.W.2d 489 (1997); *Jackson v. State*, 330 Ark. 126, 954 S.W.2d 894 (1997); *Roseby v. State*, 329 Ark. 554, 953 S.W.2d 32 (1997); *Sonny v. Balch Motor Co.*, 328 Ark. 321, 944 S.W.2d 87 (1997). If there is a message in these cases, it has not reached this court, for we are yet citing the offending language from *Franklin*, in both published and unpublished opinions. Our confusion on this issue is only too apparent in the majority opinion, which employs both *Colbert* and the offending language from *Franklin* in its analysis.

Because of this conflict in our cases, and because we and our supreme court have in effect instructed trial courts to make the most crucial determination in the *Batson* analysis — whether racial discrimination occurred — without conducting *any* inquiry, as happened in the MacKintrush case, we have failed to follow either the spirit or the law of *Batson*.

WENDELL L. GRIFFEN, Judge, dissenting.

*Why does a judge swear to discharge his duties agreeably to the constitution of the United States, if that constitution forms no rule for his government, if it is closed upon him, and cannot be inspected by him? If such be the real state of things, this is worse than solemn mockery.*

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 180, 2 L.Ed. 60 (1803).

I would reverse appellant's conviction for second-degree murder and remand his case for retrial because the trial court failed to conduct the sensitive inquiry clearly mandated by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79 (1986). The Supreme Court has also pronounced, with equal clarity, that the sensitive inquiry mandated by *Batson* applies to the genuineness of racially neutral reasons offered by prosecutors whose peremptory challenges produce *prima facie* claims of race discrimination in violation of the Equal Protection Clause to the Fourteenth Amendment to the Constitution of the United States, and that the proper time for a trial court to undertake that inquiry is during the third step of the *Batson* analytical process when the trial court is deciding whether the *Batson* movant has proved purposeful discrimination. *Purkett v. Elem*, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). Therefore, I respectfully dissent.

Appellant raised a proper objection to the prosecutor's peremptory challenge to Stephen Orji, a black member of the venire. The prosecutor failed to obtain a ruling from the trial court on whether appellant made a *prima facie* case of race discrimination to satisfy the first step in the *Batson* decision process. Although the prosecution did not agree that appellant had made a *prima facie* case, it offered a race-neutral explanation on appellant's objection concerning the challenge to Orji as if a *prima facie* case had been established. Once a prosecutor has offered a race-neutral explanation for a peremptory challenge and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant has made a *prima facie* showing of discrimination becomes moot. *Hernandez v. New York*, 500 U.S. 352 (1991).

The trial court made no inquiry after ruling that the prosecution had produced a racially neutral explanation for excluding Orji. The majority, relying upon decisions by our supreme court beginning with *Colbert v. State*, 304 Ark. 250, 801 S.W.2d 643 (1990), has affirmed that ruling. *Colbert* and cases by our supreme court decided since it was issued, hold that no inquiry is necessary where a racially neutral explanation is advanced for excluding a protected person from jury service in the face of a *prima facie* claim of discrimination contrary to the Equal Protection Clause, as I acknowledged in my dissenting opinion in *Bousquet v. State*, 59 Ark. App. 54, 953 S.W.2d 894 (1997), *rev. denied*, (Ark. Sup. Ct., December 4, 1997).

Courts in Arkansas, including its appellate courts, have never been exempt from abiding by the United States Supreme Court decisions concerning rights and remedies under the United States Constitution. This holds true for questions about claims of race discrimination in the exercise of peremptory challenges under the Fourteenth Amendment. The United States Supreme Court has not declared Arkansas a *Batson*-free state where *prima facie* claims of discrimination in jury selection can be dismissed out-of-hand with a finding that the party who exercises the questioned peremptory challenge has advanced a facially neutral explanation. It is equally obvious that the Supreme Court has never retreated from or otherwise repudiated its declaration in *Batson* that trial courts must

undertake a sensitive inquiry into available direct and circumstantial evidence of discriminatory intent in deciding if a discrimination claimant has carried his burden of persuasion.

There is an obvious contradiction between the principle and procedure pronounced by the United States Supreme Court in *Batson* and *Purkett* and the result reached in this case. The majority opinion cites no decision by the Supreme Court that has limited the sensitive inquiry requirement to those cases where a facially neutral explanation has been deemed "insufficient," and one can readily understand why none exist. Under the *Purkett* holding, if discriminatory intent is not inherent in an explanation for peremptorily excluding a prospective juror, then the explanation will be deemed facially neutral. *Id.*, 131 L.Ed.2d at 839. It necessarily follows, therefore, that all facially neutral explanations for peremptorily excluding prospective jurors protected under the Equal Protection Clause must undergo the sensitive inquiry required by *Batson*. Any other requirement would be illogical because it would be absurd to require trial courts to undertake a sensitive inquiry concerning discriminatory intent when that intent is inherent. But when discriminatory intent is not inherent in a prosecutor's explanation for peremptorily excluding a venireperson, the sensitive-inquiry requirement is essential if the trial court is to reach an intelligent decision about whether the discrimination claimant has proved that intent by a preponderance of the evidence as required by *Batson*.

The State's reliance upon *Hernandez v. New York, supra*, is misplaced. *Hernandez* shows that trial court assessments of the plausibility of racially neutral explanations are crucial, and are accorded deference on appellate review, as the Supreme Court explained when it said:

> Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in *Batson*, the finding "largely will turn on evaluation of credibility." 476 U.S., at 98, n.21. *In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed.*

*Id.* at 365, emphasis added. The *Purkett* holding shows that explanations, despite their plausibility or implausibility, will be racially neutral under *Hernandez* if discriminatory intent is not inherent, and that the proper time for scrutinizing the credibility of those explanations is during the third stage of the *Batson* process. The State's argument would subvert the holdings in *Hernandez* and *Purkett* to mean that racially neutral explanations for exercising peremptory challenges can never undergo the sensitive inquiry that *Batson* compels. The United States Supreme Court has never held that race-neutral explanations must always be believed or never questioned. Such a rule would destroy the sensitive-inquiry requirement in *Batson* altogether.

We do not disrespect our supreme court by following the controlling rulings by the United States Supreme Court in *Batson* and *Purkett,* and reversing trial court rulings that fail to undertake the sensitive inquiry required by *Batson.* We are bound to follow *Batson* and *Purkett* because the United States Supreme Court is the foremost and final authority concerning what the Equal Protection Clause of the Fourteenth Amendment means and requires. This is a recognized and fundamental principle of American constitutional law that has even been affirmed by the Arkansas Supreme Court in the area of race discrimination and jury selection.

> There can be no question that this court, as well as the trial courts of this state, is bound by the decisions of the United States Supreme Court concerning rights and prohibitions under the provisions of the United States Constitution and, there is no question that the United States Supreme Court has spoken clearly, and more than once, on the question of racial discrimination in the selection of juries in criminal cases.

*Williams v. State,* 254 Ark. 799, 496 S.W.2d 395 (1973). If the Arkansas Supreme Court is bound by decisions of the United States Supreme Court regarding the United States Constitution, the Arkansas Court of Appeals certainly has no excuse for thinking otherwise.

Given that Arkansas judges are sworn to support the Constitution of the United States, including the Equal Protection Clause

of the Fourteenth Amendment, the question raised by Chief Justice John Marshall in *Marbury v. Madison*, that was quoted at the introduction to this opinion, cannot be evaded. As the great Chief Justice observed almost 200 years ago, for judges sworn to support the Constitution of the United States to act as if that Constitution holds no power for their government "is worse than solemn mockery."

I respectfully dissent.