### HUMPOLAK *v.* STATE.

#### Opinion delivered December 12, 1927.

1.  WITNESSES—IMPEACHMENT BY CONTRADICTORY STATEMENTS.—The right to impeach a witness by showing that he had made contradictory statements does not depend on his denial of having made such statements, but proof thereof is admissible where the witness states that he does not remember, or has no recollection of having done so.

2.  WITNESSES—ADMISSION OF CONTRADICTORY STATEMENTS.—Where a witness admitted having made previous contradictory statements about the circumstances of the killing, admission of such statements was erroneous, since there could not have been necessity for impeachment purposes, and they were not admissible for any other purpose.

3.  HOMICIDE—THREATS BY DEFENDANT.—In a prosecution for murder, proof of threats made by defendant against deceased after connecting him with the crime by the introduction of other facts and circumstances, *held* admissible.

Appeal from Grant Circuit Court; *Thomas E. Toler,* Judge; reversed.

*D. E. Waddell* and *E. W. Brockman,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

KIRBY, J. The appellant was indicted for the crime of murder in the first degree for killing one Michal Bush, and was tried thereon and found guilty of murder in the second degree, and his punishment fixed at seven years' confinement in the State Penitentiary, and prosecutes this appeal from the judgment of conviction.

It appears from the testimony that the deceased was killed in the field of one Semelka, by whom he was employed, and whose field joined that of the defendant. That, on the morning of the killing, Semelka and Bush

were plowing in the field, and, when Bush reached the south end of the field and was turning around, some one, lying in wait on the outside of the fence, shot him at close range with a shotgun loaded with No. 4 shot, killing him almost instantly. The weeds and brush were trampled at the spot where the assassin was supposed to have been concealed, and where a blue shotgun shell was found. There were some fresh tracks appearing to have been made that morning, and identified as made by appellant, leading across his potato patch to the strip of woods extending to the Semelka field, where the shot was fired. The same tracks also showed leading back across the potato patch, but could not be discovered after the person making them had gone into the woods.

The officers were notified, came to the scene of the killing, made an examination of the ground, and went to appellant's house, where they found a shotgun, one barrel of which had been recently fired, and a blue shotgun shell loaded with No. 4 shot of the same kind as the empty shell picked up at the scene of the killing. Upon examination, a piece of green oak leaf was found on one of the hammers of the gun.

Appellant and his 13-year-old son, Andy Humpolak, were both arrested, and the boy was first taken to Pine Bluff and put in jail there, and later was carried to Malvern and put in jail there.

The officers at Pine Bluff said he told them that his father had shot Bush, and, if they would take him home, he would show them exactly the way he went and the way it was done. They took him down there, and he told them that his father had come down across the potato patch with the gun that morning, had first gone to the fence of Semelka's field, above where the shot was fired, in order to locate Bush, and then had gone around to the end of the field, where he shot him when Bush started to turn around at the end of the rows. He also said that his father had tied the horse he was plowing to the fence and then gone to the house and got his shotgun. When the people had assembled at the killing, and some scream-

ing and crying could be heard down there, appellant told his boy, Andy, to go down and see what the trouble was about. He did not go himself.

The testimony given by Andy Humpolak in the examining court was reduced to writing immediately afterwards, and signed by him in the presence of the magistrate and other witnesses, in which he stated that his father had killed Bush, and, after shooting him, said, "The son-of-a-bitch ain't going to report anybody any more."

Upon the trial in the circuit court this boy testified that his father had not killed Bush, and had not gone away from his home or out of his field that morning; and that he and his father were plowing in his father's field when the shot was fired. He was asked by the State, which claimed to be surprised at the change of his testimony, if he had testified differently and had stated that his father had shot Bush from the edge of the woods by the field where he was lying in wait; the latter testimony, which was signed by him, being presented along with the question. He admitted that he had made this different statement in the examining court virtually as written, but stated that it was not true, and he was afraid not to make it after having been put in jail and talked to by the officers.

The prosecuting attorney was allowed, over the objection of appellant, to read the written statement, which witness admitted he had made and testified was untrue. The court, answering the objections, said: "Yes sir. It will be for the jury to determine along with the other statements made by the witness Humpolak and others." Objections were also saved to this remark of the court.

It is also complained of as error in the grounds for the motion for a new trial that the court erred in permitting the prosecuting attorney to question the witness, Andy Humpolak, relative to his oral statement to the various officers investigating the crime, out of the presence of defendant, and to ask him if he had not made

certain statements to John Matthews, Nathan Nall and John McClellan, the prosecuting attorney, and if it had not been agreed among them all that the written statement of his testimony made in the examining court was a true report of it; and if he had not said in the written statement, as shown there, that at the time his father shot he made the remark: "The son-of-a-bitch ain't going to report anybody any more"?

The witness, when questioned, admitted that he had made the statements attributed to him and about which he was questioned, to each of the individuals, as it was claimed that he had made, but said the statements were not true.

Appellant complains of the error of the court in refusing to exclude from the jury the testimony of witnesses Frank Stewart, W. O. Thompson and John Matthews and others, reciting statements made to them by witness Andy Humpolak, which were contradictory of his testimony, but which he admitted on the stand having made to said witnesses, and denied the truth thereof.

The court instructed the jury, refusing to give appellant's requested instruction No. 1, and modified it and gave it over his objection as amended, the amendment being shown in parentheses, reading as follows:

"You are instructed that the affidavit and statements made by the witness, Andy Humpolak, prior to the time he was called as witness in this case, if you find that he did in fact make such affidavit and statements, can be considered by you for the purpose only of contradicting his testimony (or such parts of his affidavit and statement as are contradictory to his testimony in this case), and you cannot consider them as testimony of the facts related in such affidavit and statements."

It is urged that the court erred in allowing the written statement of the testimony in the examining court of the witness, Andy Humpolak, to be read to and considered by the jury, over appellant's objections, the witness on the stand having admitted, upon inquiry, that he had made such statement and denied the truth of it.

Our statutes provide that a witness may be impeached by the party producing him, under certain conditions, as well as by the party against whom he is produced, by contradictory evidence showing he has made statements different from his present testimony. Sections 4186-88, C. & M. Digest. The right to impeach a witness by showing that he had made statements different from his testimony and the admissibility in testimony of the different statements does not depend upon his denial of such statements, but if, on being asked if he made them, he answers that he does not remember or has no recollection of having done so, proof that he made the contradictory statements is admissible. *Billings* v. *State,* 52 Ark. 303, 12 S. W. 574.

In 28 R. C. L. 224, it is said:

"But the great weight of authority is to the effect that a witness may be impeached by proof of prior contradictory statements, where he merely testified that he does not remember, or has no recollection of making the statements referred to. Of course, if the witness admitted that he made the contradictory statements there is no necessity for proving them, and they are therefore not admissible in evidence."

Although it is not necessary that the witness deny having made the statements in order to the admissibility in evidence of contradictory statements for his impeachment, which may be introduced, where he testifies that he does not remember or has no recollection of having made the statements referred to, yet, when the witness admits, upon inquiry that he made the contradictory statements, there is no necessity for proving them, and they are therefore not admissible in evidence. R. C. L., *supra; Shands* v. *State,* 118 Ark. 460, 177 S. W. 18.

The witness, when inquired of concerning the different and contradictory statements made by him about the circumstances of the killing, admitted that he made them all without any denial or equivocation, and there could have been no necessity for proving them for

impeachment purposes, and, since they were not admissible for any other purposes, the court erred in allowing them to be introduced.

These statements were damaging, and necessarily highly prejudicial, so much so that it is doubtful if the prejudicial effect·could have been removed by the giving of a correct instruction to the jury for their consideration, which was not done.

We do not think any error was committed in allowing the introduction of the proof of threats made by appellant against deceased at the time, there having already been introduced other facts and circumstances connecting appellant with the commission of the crime. *McElroy* v. *State,* 100 Ark. 301, 140 S. W. 8; *Lewis* v. *State,* 155 Ark. 205, 244 S. W. 458.

For the errors designated the judgment is reversed, and the cause remanded for a new trial