TRUCK CENTER OF TULSA, INC. *v* Norman
AUTREY, d/b/a Autrey Trucking

91-352 836 S.W.2d 359

Supreme Court of Arkansas
Opinion delivered July 13, 1992

*Roy & Lambert*, by: *Robert J. Lambert, Jr.*, for appellant.

*Jeff Slaton* and *Esther M. White*, for appellee.

DONALD L. CORBIN, Justice. In December of 1986, appellee/cross-appellant Norman Autrey purchased a 1986 Freightliner truck from appellant/cross-appellee Truck Center of Tulsa, Inc. (Truck Center). Truck Center retained a security interest in the truck pursuant to a retail installment contract and security agreement. This agreement included a choice of law provision, specifying that the contract would be governed by the substantive law of Oklahoma. In early 1988, Autrey defaulted in his payments and Truck Center repossessed the truck. This suit arose out of the events subsequent to the truck's repossession.

At the time of default, Autrey owed $39,452.91 on his note to Truck Center. Truck Center eventually sold the truck and filed suit against Autrey for a deficiency of $21,452.91. Autrey counterclaimed, alleging that Truck Center was guilty of conversion for selling the truck in a commercially unreasonable manner. Autrey sought compensatory damages and punitive damages for the alleged intentional, wanton, malicious, and fraudulent conduct of Truck Center.

A jury trial was held in Washington County Circuit Court.

Truck Center testified that, following repossession of the truck, notice was sent by certified mail to Autrey's last known address to inform Autrey that the truck would be sold in a private sale on April 14, 1988. Autrey denied receiving such notice.

Troy Mills, Truck Center's manager, testified that a sale did not "physically take place" on April 14, 1988, but that Truck Center obtained telephone bids on the truck. Mills testified that Truck Center sold the truck for $18,000.00 to Arrow Truck Sales, the highest telephone bidder. Following this alleged "telephone sale," Arrow sent an $18,000.00 check to Truck Center. The next day, Truck Center sent an $18,100.00 check back to Arrow to repurchase the truck. Ultimately, Truck Center sold the truck to Ray Robinson, and Autrey introduced documentation indicating that Robinson paid $39,000.00 for a 1986 freightliner. However, Mills testified that Robinson paid only $18,200.00 for the actual truck, and explained that the $39,000.00 figure represented the price of the truck plus "credits" to purchase necessary parts for the truck.

Autrey introduced by deposition the testimony of Buzz Stanfield, Truck Center's former sales manager. This deposition testimony included a recorded telephone conversation between Stanfield and Autrey in which Stanfield informed Autrey that Truck Center's sale to Arrow and subsequent repurchase of the truck was a "set up deal" to establish a deficiency on the part of Autrey.

The jury returned a verdict on interrogatories, finding that the sale of the truck was commercially unreasonable, and that the fair market value of the truck was $28,000.00 at the time of the sale. The jury further found that the actions of Truck Center were willful, wanton, and malicious, and based on this finding, the trial court refused to enter a deficiency judgment for Truck Center. Finally, the jury awarded Autrey $7,000.00 punitive damages, and the court awarded Autrey $664.00 in costs. The court, however, denied Autrey's request for attorney fees.

Appellant Truck Center raises six arguments for reversal, with Autrey cross-appealing the trial court's denial of attorney fees. The arguments for reversal are: 1) the trial court erred in denying appellant a deficiency judgment including attorney fees and costs; 2) the trial court erred in allowing the recorded

telephone call between Autrey and Buzz Stanfield to be read into the evidence; 3) the trial court erred in ruling that a finding of commercial unreasonableness constitutes conversion as a matter of law; 4) the trial court erred in refusing to instruct the jury that the law allows the creditor substantial flexibility in the disposition of repossessed collateral; 5) the trial court erred in submitting the issue of punitive damages to the jury; and 6) the trial court erred in awarding Autrey $664.00 in costs. We find no merit to any of the arguments raised on appeal, with the exception of the costs awarded to Autrey for a court reporter. Accordingly, we reverse the award of costs for the court reporter, and affirm on all other grounds.

Initially, we note that the trial court applied the substantive law of Oklahoma, and the evidentiary and procedural rules of Arkansas. As the parties do not dispute the trial court's choice of law, we do not address the issue on appeal.

Appellant's first argument is that the trial court erred in refusing to enter a deficiency judgment including attorney fees and costs against Autrey. The trial court interpreted Oklahoma law as depriving a creditor of the right to a deficiency judgment in cases where the creditor has acted maliciously.

In *Beneficial Fin. Co.* v. *Young*, 612 P.2d 1357 (Okla. 1980), the Oklahoma Supreme Court held that a creditor's noncompliance with the Uniform Commercial Code generally does not deprive the creditor of his right to a deficiency judgment. However, the Oklahoma court expressly limited its holding to cases that do not involve "malice, fraud, or oppression":

> To hold that noncompliance deprived creditors of their right to a deficiency judgment would not only protect the debtor, but it would also penalize the creditor. In light of the fact that the sale of collateral is necessitated by the fault of the debtor, we hold that the punishment of creditors for noncompliance with the provisions of Part 5 of Article 9 would be unjustified, *in the absence of malice, fraud, or oppression.* [Emphasis added.]

*Id.* at 1359. The trial court relied on this language to hold that Oklahoma law *does* deprive a creditor of the right to a deficiency judgment when malice is proven.

Appellant argues that the trial court took out of context the qualifying phrase "in the absence of malice, fraud, or oppression." According to appellant, Oklahoma law does not deprive a creditor of the right to a deficiency judgment, regardless of the creditor's conduct. Under appellant's interpretation of the *Young* case, the qualified holding does not limit the creditor's right to a deficiency but allows for the imposition of punitive damages under non-code law in cases involving malice, fraud, or oppression.

■ We disagree with appellant's interpretation of Oklahoma law. The afore-quoted language of the *Young* court appears in the section of the opinion addressing the narrow question of whether a creditor is entitled to a deficiency judgment when the creditor fails to act in a commercially reasonable manner. In this context, the phrase "in the absence of malice, fraud, and oppression" is only relevant as a condition on the creditor's right to a deficiency. We therefore agree with the trial court that Oklahoma law does not allow recovery of a deficiency in cases involving malice, fraud, or oppression. As the jury in this case found that the actions of Truck Center were willful, wanton, and malicious, we find no error in the trial court's refusal to grant a deficiency judgment including attorney fees and costs.

Appellant's second allegation of error concerns the trial court's admission of a partial transcript of a recorded telephone call between Autrey and Buzz Stanfield, the former general manager of Truck Center. Stanfield was not present at trial, but the trial court found that Stanfield was not amenable to process in Arkansas, and Autrey's counsel was allowed to read into evidence Stanfield's previously taken deposition.

During Stanfield's deposition, Autrey's counsel questioned Stanfield about the transaction between Truck Center and Arrow Truck Sales involving the repossessed truck. Stanfield was asked several times whether he told Autrey during a phone conversation that the sale from Truck Center was simply a "wash sale" in which $18,000.00 checks were exchanged. Stanfield repeatedly denied making such statements, and maintained that he had always been under the impression that Truck Center repurchased the truck from Arrow for a price in excess of $18,000.00.

At this point in the deposition, Autrey's counsel proceeded to

play a tape recorded telephone conversation between Stanfield and Autrey. During the conversation, Stanfield informed Autrey that the truck was sold to Arrow "fictitiously," and that Arrow had sent Stanfield a check for the truck, whereupon Stanfield "turned around and sent them one back for it and bought it back." Stanfield also admitted in the course of the phone conversation that the transaction with Arrow was "a set-up deal" so that Autrey could be sued for the deficiency. Stanfield prefaced these statements by remarking that he did not "want to get in no goddamn lawsuit," and Stanfield threatened to deny in court any statements he made to Autrey.

The sole argument raised by appellant regarding Autrey's deposition testimony concerns the portion of the deposition containing the phone conversation transcript. Appellant argues that the phone conversation was inadmissible hearsay. Appellant also argues that Stanfield's recorded statements were not admissible for impeachment purposes under A.R.E. Rule 613 because the recorded statements were not inconsistent with Stanfield's deposition testimony.

ARCP Rule 32 governs the use of depositions in court proceedings. This rule provides in pertinent part:

> (a) Use of Depositions. At the trial . . . any part or all of a deposition, *so far as admissible under the rules of evidence applied as though the witness were then present and testifying*, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
>
> . . . .
>
> (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: . . . (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of this state, unless it appears that the absence of a witness was procured by the party offering the deposition; . . . or (D) the party offering the deposition has been unable to procure the attendance of the witness by subpoena[.] [Emphasis added.]

In this case, the trial court prefaced the reading of Mr. Stanfield's deposition by stating that Mr. Stanfield lived outside the State of Arkansas and was not amenable to subpoena. Appellant does not challenge this finding and, in fact, the record reveals that both parties anticipated that Stanfield's deposition would be used as evidence at trial. Autrey's pretrial Motion for Subpoena for Out of State Witnesses explicitly stated that Stanfield's deposition would be taken "for the purpose of evidence in the trial[.]" The order granting Autrey's motion also stated that the depositions of the out of state witnesses would be used as evidence at trial. As both parties anticipated that Stanfield's deposition would be utilized as evidence at trial, we need only to consider whether the portion of the deposition containing the phone conversation transcript was admissible under the Arkansas Rules of Evidence, applied as though Stanfield were present and testifying at trial.

■ Under A.R.E. Rule 613, a prior inconsistent statement by a witness is admissible for impeachment purposes. While appellant argues that Stanfield's deposition testimony is not inconsistent with Stanfield's statements during the phone conversation, our reading of Stanfield's testimony indicates otherwise.

■ At Stanfield's deposition, Stanfield repeatedly denied stating that the sale to Arrow was a "wash sale," in which the two truck companies merely exchanged checks. However, in the previously recorded phone conversation, Stanfield had unequivocally apprised Autrey that the transaction between Truck Center and Arrow Truck Sales was not a legitimate sale. In fact, Autrey had described the transaction as a "set up deal," arranged so that Autrey could be sued for a deficiency. While we concede that Stanfield did not use the term "wash sale" in his phone conversation with Autrey, the question posed by Autrey's counsel defined the term "wash sale" as the mere exchange of checks. This clarification put Stanfield on notice of the term's definition, and gave Stanfield the opportunity to either explain or deny his prior statements to Autrey.

■ We have not limited the admission of prior inconsistent statements to those instances in which diametrically opposite assertions have been made. *See Flynn* v. *McIlroy Bank & Trust Co.*, 287Ark. 190, 697 S.W.2d 114 (1985). Rather, we have

adopted Judge Weinstein's view that a witness' prior statement is admissible "whenever a reasonable man could infer on comparing the whole effect of the two statements that they have been produced by inconsistent beliefs." *Id.* at 193, 697 S.W.2d at 116, quoting 4 *Weinstein's Evidence* ¶ 801(d)(1)(A)[01]. In this case, a reasonable person could conclude that Stanfield's deposition testimony contradicted his earlier recorded statements, and we perceive no error in the admission of his prior statements regarding the transaction between Truck Center and Arrow.

■ Stanfield's statements were also admissible as substantive evidence under A.R.E. Rule 801(d)(1). This rule provides that a witness' prior inconsistent statement is not hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement. When deposition testimony is utilized at trial pursuant to ARCP Rule 32, subsection (a) of that rule provides that the rules of evidence be applied "as though the witness were then present and testifying." As we have already determined that Stanfield's statements during the phone conversation were inconsistent with his deposition testimony, and Stanfield was subject to cross-examination about these statements at the deposition, we find no error in the substantive admission of Stanfield's prior statements.

Appellant next argues that the trial court erred by refusing to instruct the jury on the elements of conversion. The trial court ruled that under Oklahoma law, a commercially unreasonable sale constitutes a conversion as a matter of law.

We agree with the trial court's interpretation of Oklahoma law. In *Davidson v. First Bank & Trust Co., Yale*, 609 P.2d 1259 (Okla. 1976), a creditor bank rightfully repossessed the collateral at issue, yet subsequently failed to proceed in a commercially reasonable manner. The debtor sued for conversion, and the Oklahoma Supreme Court upheld a stipulation of actual damages, and affirmed an award of punitive damages. The court's reasoning is set out on page 1261 of the opinion:

> *If repossessed property is sold in a commercially unreasonable manner there is a conversion*, the actual damages being the difference between the value of the property and the proceeds of the sale. If there is a conversion, and the actions are malicious or willful, punitive damages may be

awarded by the jury under existing statutory and case law. [Emphasis added.]

*Id.* at 1261. The following statement also appears in the *Davidson* opinion: "In its brief Bank admits that conversion may be the result of either wrongful repossession or wrongful sale, and we agree." *Id.* at 1261.

■ Based on the explicit language set out in the *Davidson* opinion, we agree with the trial court that a finding of commercial unreasonableness constitutes conversion as a matter of law under Oklahoma law. Accordingly, we find no error in the trial court's refusal to instruct the jury on the elements of conversion.

Appellant's fourth amendment for reversal is that the trial court erred in refusing to instruct the jury that Oklahoma law allows a creditor "substantial flexibility" in the disposition of repossessed collateral. The trial court refused the instruction proffered by appellant, and dealt with the disposition of collateral in Instructions 11 and 13.

Instruction No. 11 informed the jury of the commercial reasonableness limitation on a creditor's disposition of collateral. This instruction provided as follows:

> Sale or other disposition of the 1986 Freightliner may be made at any time and place and on any terms but every aspect of the disposition, including the method, manner, time, place, and terms must be commercially reasonable.

Instruction No. 13 defined the commercially reasonable standard:

> As to the issue of whether this sale was conducted in a commercially reasonable manner, the law states that Truck Center of Tulsa, Inc. acts in a commercially reasonable manner when, in the process of disposing of the repossessed collateral, it acts in good faith and in accordance with commonly accepted commercial practices which afford all parties fair treatment.

Instruction No. 13 essentially quotes the standard of commercial reasonableness set out in *Wilkerson Motor Co. v. Johnson*, 589 P.2d 505 (Okla. 1978). The Oklahoma Supreme

Court explained the standard as follows:

> Generally, the secured party acts in a commercially reasonable manner when the process of disposing of repossessed security he acts in good faith and in accordance with commonly accepted commercial practices which afford all parties fair treatment.

*Id.* at 509.

Both the *Wilkerson* case and Instruction No. 13 incorporate the standard for commercial reasonableness set out in 12A Okl. Stat. Ann. § 9-507(2) (Supp. 1992). However, the *Wilkerson* opinion prefaced its analysis of the commercial reasonableness standard by stating, "The clear intent of the applicable provisions of the UCC is to allow the repossessing secured party substantial flexibility as to the method chosen to dispose of the collateral." *Id.* at 507. Appellant cites this language in support of his argument that a "substantial flexibility" instruction was necessary to give the jury a complete definition of "commercially reasonable sale."

We disagree. The trial court instructed the jury on the commercial reasonableness limitation as that limitation has been defined by Oklahoma statute and case law. The *Wilkerson* court's recognition of the substantial flexibility afforded to a creditor in disposing of collateral is not a definition of the commercial reasonableness limitation but a broad interpretation of the purpose of the U.C.C.'s default provisions. As the instructions given by the trial court did not mislead the jury on the commercial reasonableness limitation as defined under Oklahoma law, we find no error in the refusal of appellant's proffered instruction.

Appellant's fifth argument is that the trial court in submitting the issue of punitive damages to the jury because the evidence was insufficient to show that the actions of Truck Center were willful, wanton, or malicious. In order for punitive damages to be awarded under Oklahoma law, two requirements must be met: first, actual damages must be shown; second, the secured party's acts must be wanton, malicious, and intentional. *Davidson, supra.* Appellant's specific challenge is to the second of these requirements. However, we discuss the actual damages prerequisite in order to clarify our ultimate disposition of this case.

Under Oklahoma law, the measure of actual damages for a

commercially unreasonable sale is the difference between the value of the property and the proceeds of the sale. *Beneficial Fin. Co.* v. *Young*, 612 P.2d 1357 (Okla. 1980); *Davidson* v. *First Bank & Trust Co., Yale*, 609 P.2d 1259 (Okla. 1976). In this case, Truck Center sold the repossessed truck to Arrow for $18,000.00. The jury found that the sale was commercially unreasonable, and that the fair market value of the truck was $28,000.00. Accordingly, Autrey sustained actual damages in the amount of $10,000.00.

Generally, under Oklahoma law, the damages sustained in a commercially unreasonable sale are set off against a deficiency. *Young, supra.* In this case, however, the finding of malicious conduct on the part of Truck Center negated the possibility of a set-off situation by depriving Truck Center of its right to a deficiency judgment. Therefore, Autrey did not actually receive compensatory damages for the commercially unreasonable sale.

We do not interpret Oklahoma law as depriving the wronged debtor of his right to seek punitive damages in such situations. Such an interpretation would allow a secured party to shield itself from punitive damages behind its own wrongful conduct. The Oklahoma Supreme Court addressed a similar situation in the *Davidson* case, *supra.* In that case, the court held that a secured bank could not escape liability for punitive damages by virtue of the bank's earlier stipulation that the value of the collateral equaled the debt. In so holding, the court indicated that it would not allow secured creditors to exploit the actual damages requirement:

> Bank may not extricate itself from liability for punitive damages by admitting the amount of actual damages sustained and then claiming because it has made this concession there are no actual damages on which to base a punitive award.

*Id.* at 1262.

Based on the rationale expressed in the *Davidson* opinion, we interpret Oklahoma's actual damages prerequisite as a requirement that such damages be shown rather than awarded

in conversion actions based on commercially unreasonable sales.[1] As the jury in this case found that the fair market value of the truck exceeded the proceeds of the commercially unreasonable sale, Autrey's right to seek punitive damages was unaffected by his failure to actually receive compensatory damages.

 The evidence amply supports the jury's finding that the actions of Truck Center were willful, wanton, or malicious. The testimony and exhibits relating to the transactions between appellant and Arrow indicate that appellant simulated a sale of the truck in order to establish an excessive deficiency. Troy Mills, the owner of Truck Center testified that Truck Center sold the truck to Arrow for $18,000.00, yet Arrow never received title to the truck. Appellee introduced documentation showing that Truck Center sold the truck to Arrow for $18,000.00 on June 1, 1988, and that Truck Center repurchased the truck on the following day for $18,100.00. Appellee introduced additional documentation indicating that the truck was ultimately purchased by Ray Robinson for $39,000.00. The difference in the $18,100.00 repurchase price and the sale price in the sale to Robinson supports a finding that Truck Center acted willfully in its original "sale" to Arrow.

The statements of Buzz Stanfield, Truck Center's former general manager, provide the most compelling evidence of malice and willfulness. Stanfield stated that appellant's transaction with Arrow was "a set up deal" so that appellant could sue Autrey for a deficiency. Stanfield also stated that the exchange of checks between appellant and Arrow was for the purpose of arranging a fictitious sale. These statements, combined with the progressive documentation of appellant's transactions involving the truck, provided sufficient evidence for the jury to be instructed on punitive damages.

---

[1] We are aware of the Oklahoma Supreme Court's decision in *Brigance* v. *Velvet Dove Restaurant*, 756 P.2d 1232 (Okla. 1988), in which the court stated, "It is settled law in Oklahoma that punitive damages are not recoverable unless actual damages are allowed and recoverable." *Id.* at 1235. However, we do not find that statement dispositive of the actual damages prerequisite in cases such as the instant one, because the *Brigance* case was a personal injury action that did not implicate the actual recovery limitations of the forfeiture rule.

Appellant's final argument is that the trial court erred in awarding Autrey $664.00 in costs. Specifically, appellant objects to the $477.00 in costs awarded to the court reporter who took the depositions of Buzz Stanfield and Ray Robinson. Appellant also objects to the award of $34.00 each to William Lash and Susan Fox for witness fees.

■ We affirm the $68.00 awarded as witness fees. Under ARCP Rule 45(d), trial witnesses are entitled to $30.00 per day for attendance, and $0.25 per mile for travel from the witness' residence to the place of the trial or hearing. At the post-trial hearing in this case, counsel for appellee informed the trial court that the $34.00 figures included $4.00 allotted as mileage based on the rate of $0.25 per mile. Under ARCP Rule 54(d), costs are allowed as of course to the prevailing party unless the court otherwise directs. As Rule 45(d) provides for trial witnesses to be paid $30.00 for attendance and $0.25 for mileage, we find no error in the trial court's award of $68.00 in witness fees for Lash and Fox.

■ We do, however, find error in the $477.00 awarded for the court reporter who took the depositions of Buzz Stanfield and William Lash. The only documentary proof of the court reporter fee is its inclusion on an unnotarized itemization of expenses attached as "Exhibit A" on appellee's post-trial brief for attorney fees and expenses. Such unsubstantiated proof is deficient for purposes of an award of costs under Rule 54(d). *See Monahan* v. *Nebraska*, 575 F. Supp. 132 (D. Neb. 1983), *mod. on other grounds sub nom. Rose* v. *Nebraska*, 748 F.2d 1258 (8th Cir. 1984), *cert. denied*, 474 U.S. 817 (1985). We therefore reverse the portion of the judgment awarding appellee costs for the court reporter fee.

Appellee cross-appeals the trial court's denial of attorney fees. Appellant relies on 12 Okl. Stat. Ann. § 936 (1988) in arguing that he is entitled to attorney fees. This statute provides as follows:

> In any civil action to recover on [a] . . . contract relating to the purchase or sale of goods, . . . unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed

and collected as costs.

We disagree with appellee's assertion that he prevailed on a contract action. Appellee responded to appellant's suit on the sales contract by counterclaiming for conversion. We agree with the trial court that the conversion action did not arise out of the sales contract but out of the events subsequent to appellee's default on the contract and appellant's repossession of the collateral. As the claim on which appellee prevailed was for the tort of conversion, we find no error in the trial court's denial of attorney fees.

Affirmed in part, reversed in part, and modified on direct appeal; affirmed on cross-appeal.