Michael Drew KENNEDY v. STATE of Arkansas

CR 00-1250                                          42 S.W.3d 407

Supreme Court of Arkansas
Opinion delivered April 19, 2001

*Perroni & James Law Firm*, by: *Samuel A. Perroni* and *Janan Arnold Davis*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Misty Wilson Borkowski*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Michael Drew Kennedy was convicted in the Van Buren County Circuit Court of first-degree battery and sentenced to ten years' imprisonment. Appellant appealed his conviction to the Arkansas Court of Appeals, asserting that the trial court erred when it allowed a prior statement given by an eyewitness to be read into evidence by the police officer who took the statement. In a 4-2 decision, the court of appeals affirmed the judgment of conviction. *See Kennedy v. State*, 71 Ark. App. 171, 27 S.W.3d 467 (2000). We granted Appellant's petition for review, pursuant to Ark. Sup. Ct. R. 1-2(e)(ii). We affirm.

The record reflects that on July 27, 1997, around 2:30 a.m., a fight occurred outside the 659 Club, in Choctaw, Arkansas. The

fight was primarily between Appellant and Lanny Bates, although there was testimony that Appellant's friend, Rodney Brown, was also involved. As a result of the fight, Bates received multiple knife wounds to his back, neck, throat, and face. Appellant received a cut on his hand. Bates was taken by ambulance to a nearby hospital and later air-lifted to UAMS in Little Rock. Appellant was subsequently arrested and charged with first-degree battery. No other arrests were made. At trial, Appellant claimed that he had acted in self-defense and that Bates was the initial aggressor. Appellant admitted that he had cut Bates two times in the back with his knife; however, he denied making any of the other cuts to Bates.

The State presented testimony from numerous persons who witnessed the fight. Only two of the State's witnesses, Bates and Kim Kennedy, had knowledge as to how the fight started. Kim, who is the wife of Appellant's first cousin, Mark Kennedy, gave a statement to Arkansas State Police Investigator Ross Dean, approximately one week after the fight. Kim told Dean that Appellant had started the fight, and that he had a knife in his hand. At trial, however, Kim did not recite the incident as she had to the police. Instead, she claimed that she could not recall much of the details about the fight. Specifically, Kim testified that she could not remember who started the fight or whether Appellant had a knife. When pressed by the prosecutor, she offered the excuse that she had been pregnant at the time and had been fighting with her husband. She also stated that she was nervous. When questioned about specific statements that she had made to police, Kim repeatedly claimed a lack of memory.

After Kim was excused from the witness stand, the prosecutor recalled Dean and asked him to tell the jury what Kim had told him. Defense counsel objected to the testimony on the ground that it was hearsay. A hearing was then held outside the presence of the jury. The prosecutor argued that he should be permitted to impeach the witness with her prior inconsistent statements. Defense counsel countered that Kim's inability to recall what happened was not inconsistent with her statements to Dean. Defense counsel further argued that the prior statements would be prejudicial to the defense, and that Appellant would be deprived of the opportunity to confront the witness if her statement was offered through the officer. The trial court allowed the testimony under Ark. R. Evid. 613(b) and this court's holding in *Chisum v. State*, 273 Ark. 1, 616 S.W.2d 728 (1981). The trial court, however, did not allow the State to introduce the officer's written report of the statements.

Thereafter, Dean read Kim's statements to the jury. In pertinent part, Kim told the officer that she was in the parking lot of the 659 Club with her husband, Mark Kennedy, Bates, and another man. Kim saw Bates walk over to where Mark, Appellant, and Brown were standing. Kim followed Bates, but she could not hear what was being said, due to her hearing impairment. Kim saw Mark give Brown $10 to keep Brown from fighting him. Kim could not hear what Bates and Appellant were saying, but she observed a knife in Appellant's right hand. Kim then saw Appellant hit Bates in the face with his fist. The next thing she saw was that the knife had switched from Appellant's right hand to his left hand. She saw Bates fall to the ground, and she yelled for Mark to stop the fight. Mark declined, telling Kim that Bates had told him that he (Bates) could handle the fight himself. Kim then heard Bates call for Mark to help him. At that point, Mark grabbed Appellant and took him to his truck. Kim could see that Appellant had blood on his hand. When Bates, who was still on the ground, turned his head, Kim could see that his throat was cut.

■ In the court of appeals, Appellant argued that the trial court erred in allowing Kim's testimony to be impeached with extrinsic evidence of her prior statements to Dean. Specifically, he contended that (1) Kim's testimony was not inconsistent with her prior statements to police, as required by Rule 613(b); (2) Dean's testimony of her prior statements was impermissibly used and considered by the jury as substantive evidence, in violation of Ark. R. Evid. 801(d)(1)(i); and (3) he was denied his right to confront the witness because her prior statements were admitted through the testimony of Dean. The court of appeals rejected Appellant's arguments, relying entirely on this court's holding in *Chisum*, 273 Ark. 1, 616 S.W.2d 728. The dissent, on the other hand, concluded that *Chisum* was not applicable and had been limited in its scope by this court's holding in *Smith v. State*, 279 Ark. 68, 648 S.W.2d 490 (1983). We granted Appellant's petition for review in order to clarify any perceived inconsistencies in this court's decisions. When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed with this court. *See Miller v. State*, 342 Ark. 213, 27 S.W.3d 427 (2000).

For purposes of clarification, we note that Appellant does not argue that it was error to allow the prosecutor to impeach Kim's testimony during his direct examination of her. Indeed, the record demonstrates that Appellant did not object to the prosecutor's questions to Kim about her prior statements to Dean. Thus, Appellant is

not challenging the use of intrinsic evidence to impeach the witness. Rather, he argues only that it was error for the trial court to allow impeachment by extrinsic evidence, *i.e.*, Dean's testimony of her prior statements. We discuss the points on appeal separately.

## I. Admissibility of the Prior Statements under Rule 613(b)

Appellant first argues that the witness's lack of memory did not render her testimony sufficiently inconsistent with her prior statement to police. Correspondingly, he asserts that because her statements were not inconsistent with her testimony, the trial court erred in allowing the prosecutor to present extrinsic evidence of her prior statements. We disagree.

### A. Degree of Inconsistency Required

■■ The first issue we must resolve is whether Kim's professed lack of memory of the particular details of the incident rendered her trial testimony inconsistent with her prior statement to police. This court has previously recognized that an " 'inconsistent statement' as used in Rule 613, is not limited to those instances in which diametrically opposite assertions have been made." *Roseby v. State*, 329 Ark. 554, 564, 953 S.W.2d 32, 37 (1997), *overruled on other grounds*, *MacKintrush v. State*, 334 Ark. 390, 978 S.W.2d 293 (1998), (citing *Truck Ctr. of Tulsa, Inc. v. Autrey*, 310 Ark. 260, 836 S.W.2d 359 (1992); *Flynn v. McIlroy Bank & Trust Co.*, 287 Ark. 190, 697 S.W.2d 114 (1985)). *See also United States v. McCrady*, 774 F.2d 868, 873 (8th Cir. 1985) (quoting *United States v. Dennis*, 625 F.2d 782, 795 (8th Cir. 1980)) (holding that under Fed. R. Evid. 613, inconsistency "may be found in evasive answers, inability to recall, silence, or changes of position"). This court has adopted Judge Weinstein's view that a statement is inconsistent "whenever a reasonable person could infer on comparing the whole effect of the two statements that they have been produced by inconsistent beliefs." *Roseby*, 329 Ark. at 564, 953 S.W.2d at 37. Considerable discretion is given to the trial court when determining where the line is drawn in the impeachment of a hostile witness, and those rulings will not be reversed absent an abuse of discretion. *Id.*; *Hughey v. State*, 310 Ark. 721, 840 S.W.2d 183 (1992).

The leading Arkansas case on this issue is *Chisum*, 273 Ark. 1, 616 S.W.2d 728. In that case, the appellant's sister, called as a witness for the state, testified that she had forgotten many of the

details of the crime and had also forgotten what she had told the police in a prior interview. Due to her lack of memory, the trial court allowed the state to impeach her testimony by having the sheriff and his secretary narrate the statements given by the witness to the sheriff. On appeal, this court held that "the statements were unquestionably admissible for the purpose of impeachment[.]" *Id.* at 6, 616 S.W.2d at 730. This court reasoned that the fact that the witness had "professed not to remember what she had said to the sheriff did not preclude the prosecution from using her prior inconsistent statements." *Id.* at 8, 616 S.W.2d at 731. This court relied on the case of *Billings v. State*, 52 Ark. 303, 12 S.W. 574 (1889), in which it was held:

> The statute does not place the right to impeach a witness by proof of contradictory statements, upon the condition of his denial. It requires his cross-examination upon the matter; nothing more. This is exacted in order that he may explain apparent contradictions and reconcile seeming conflicts and inconsistencies. If he cannot remember the fact, he is unable to do what the law affords him the opportunity to do. If he cannot remember the statement made, it is quite as probable that his recollection of the occurrence about which he testifies is inaccurate or incorrect. *If contradiction properly affects the value of his testimony when he denies, it is difficult to see why it should not when he ignores the contradictory or inconsistent statements. The testimony is discredited because he affirms today what he denied yesterday; the legitimate effect of such contradiction cannot depend upon his power to remember it. If the defect in the memory is real, the proof of the contradiction apprises the jury of this infirmity of the witness; if he has made a false statement under the pretense of not remembering, he should not escape contradiction and exposure.* We think the evidence was properly admitted.

*Chisum*, 273 Ark. at 8, 616 S.W.2d at 732 (emphasis added) (quoting *Billings*, 52 Ark. at 308, 12 S.W. at 575).

Similarly, in *Roseby*, 329 Ark. 554, 953 S.W.2d 32, the witness, who was related to the defendant, admitted making statements to the police, but claimed that she could not remember what she had said. After she was given the opportunity to review her prior statements, the witness stated that she could not remember saying those things because she was under the influence of drugs at the time. The prosecutor then proceeded to ask the witness about specific information that she had given to the police. Each time, the witness responded that she did not remember. On appeal, the appellant argued that the prosecutor should not have been allowed

to impeach the witness with her unsworn statements because she did not directly contradict her prior statements; rather she merely declared that she could not remember them. This court disagreed, relying in large part on the decision in *Chisum*. This court noted that just as in *Chisum*, the witness's "statements that she 'forgot' were sufficiently inconsistent to allow the introduction of her prior sworn statement." *Id.* at 564, 953 S.W.2d at 37. This court then observed that it has "reached this same conclusion in numerous cases where a witness claimed to have forgotten a prior statement that is unfavorable to the defendant." *Id.* (citing *Hughey*, 310 Ark. 721, 840 S.W.2d 183; *Flynn*, 287 Ark. 190, 697 S.W.2d 114; *Humpolak v. State*, 175 Ark. 786, 300 S.W. 426 (1927); *Billings*, 52 Ark. 303, 12 S.W. 574).

The facts of the present case are very similar to those in *Chisum* and *Roseby*. Here, the witness, Kim Kennedy, is married to the Appellant's first cousin. Kim gave the police a detailed account of the fight, approximately one week after the incident had occurred, in which she stated that Appellant had a knife, and that he threw the first punch. At trial, however, she claimed that she had forgotten many of the details that were crucial to the State's case. When questioned by the prosecutor about many of those details, she repeatedly claimed that she could not remember them. The pertinent parts of her testimony are as follows:

BY MR. JAMES:

Q. Okay. Kim, were you very close to what happened and saw what happened that night?

A. I don't quite remember all that happened. I was pregnant at the time.

Q. Okay. Kim, you made a statement to the police just a few days after this happened, isn't that right?

A. Yes, sir.

Q. And have you had a chance to review or would you like to review your statement?

A. I've already reviewed it, Sir.

Q. Okay. So, what you told the police that day, was that what you remember happening?

A. Part of it.

Q. Part of it?

A. Uh-huh.

Q. Are you saying that now that you've read your statement you're not sure about something?

A. I — I can't quite remember all for sure. I wasn't really for sure.

Q. Uh.

A. If it all happened. 'Cause me and my husband was in an argument. We were fussing and fighting.

. . . .

Q. Okay. All right. Now, during the fight, did you see a knife?

A. Not, I can't remember. I don't quite remember.

Q. Oh. Well, do you remember telling the police officer that you saw Michael Drew Kennedy with a knife in his hand?

A. I don't remember seeing Michael Drew Kennedy with a knife.

Q. And that you — you remember — do you remember telling the police officer that you saw him hit Lanny in the face with his fist?

A. That's what I don't remember. I cannot remember if he did or not because that's when me and my husband both were standing there fighting; 'cause we were arguing.

Q. Do you remember telling the police officer that the next thing you saw was that Michael had the knife in his left hand, he had moved it from the right hand to the left hand?

A. No, sir, I don't.

Q.   And then Lanny fell to the ground. Do you remember telling the police officer that?

A.   I can't remember if I did or not, sir.

Q.   Okay. Do you remember yelling to Mark to stop the fight?

A.   Pardon me?

Q.   Do you remember yelling to Mark at that point to stop the fight?

A.   I was, no. All I can remember was that [we] were talking about something and I was ready to go.

Q.   You were just talking about something and you were ready to go?

A.   Uh-huh. I can't quite remember.

     . . . .

Q.   Okay. I'd like to show you a photograph. I'm going to show you a picture it's State's Exhibit No. 4. Did you see a wound on Lanny Bates like that on his neck?

A.   I can't remember. I don't remember seeing no — I didn't — all I saw was him laying on the ground.

Q.   Do you remember telling the police officer that when Lanny turned his head while laying on the ground you could see that his throat was cut?

A.   That's all I can remember. That's all I could see was blood. That's just all I could see.

Q.   You don't remember telling the police officer —

A.   I don't remember if his throat was cut or what. All I know I saw was blood.

     . . . .

Q.   Well, do you believe that you told the police officer the truth on the day that you talked to him?

A. All I remember is what I told him what I saw and that's all I could remember at what I seen.

Q. All right. But you weren't lying to him when you talk[ed] to him, were you?

A. No, sir.

Q. Okay. So, if the police officer said that you told him these things on here, he would be telling the truth, wouldn't he?

A. Well, sir, all I know is I — what I told the cop is what I think I know. I didn't — I wasn't for sure. I just know what I thought.

Q. Okay.

A. But I was not for sure.

Q. But you wouldn't make up some specific things if you weren't pretty sure; like Michael Drew Kennedy having a knife in his hand, like Lanny Bates having his throat cut. You wouldn't have guessed on these things, would you?

A. No, sir. I do not guess on them things. I'm just — I'm for sure.

■ Based on the foregoing exchange, we conclude that the witness's trial testimony was sufficiently inconsistent with her prior detailed statements to the police. Her claimed loss of memory, which was conveniently favorable to Appellant, her husband's first cousin, was similar to the testimony given by the witnesses in *Chisum* and *Roseby*. Accordingly, it was not error to allow impeachment of the witness.

*B. Extrinsic Evidence*

■ The next issue is whether the trial court erred in allowing the State to present extrinsic evidence of the witness's prior inconsistent statements under Rule 613(b), which provides in pertinent part:

Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an

> opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon[.]

Under this rule, three requirements must be met before extrinsic evidence of a prior inconsistent statement will be admissible. First, the witness must be given the opportunity to explain or deny the inconsistent statement. Second, the opposing party must be given the opportunity to explain or deny the witness's inconsistent statement. Third, the opposing party must be given the opportunity to interrogate the witness about the inconsistent statement. Additionally, this court has held that when the witness admits to having made the prior inconsistent statement, Rule 613(b) does not allow introduction of extrinsic evidence of the prior statement to impeach the witness's credibility. *Byrd v. State*, 337 Ark. 413, 992 S.W.2d 759 (1999); *Ford v. State*, 296 Ark. 8, 753 S.W.2d 258 (1988). In other words, once a witness acknowledges having made a prior inconsistent statement, the witness's credibility has successfully been impeached. "An admitted liar need not be proved to be one." *Id.* at 18, 753 S.W.2d at 263 (quoting *Gross v. State*, 8 Ark. App. 241, 250, 650 S.W.2d 603, 608 (1983)). Where, on the other hand, the witness is asked about the prior statement and either denies making it or fails to remember making it, extrinsic evidence of the prior statement is admissible. *See* 1 John W. Strong, *McCormick on Evidence* § 34, at 126 (5th ed. 1999). *See also United States v. Cline*, 570 F.2d 731 (8th Cir. 1978).

■ In the present case, the requirements for admitting extrinsic evidence of the witness's prior inconsistent statements were met. First, the foregoing exchange between the prosecutor and the witness demonstrates that the witness was given an opportunity to explain or deny the prior statements. During her questioning, Kim consistently demonstrated an inability to recall the facts or to remember what she had previously said to the police. We disagree with Appellant's assertion that Kim admitted making the prior statements. Her testimony *in toto* reflects that the only thing that she fully admitted was that she had given a statement or interview to the police. When asked about specific information or particular statements that she made, she professed a lack of memory. Indeed, even when she stated that she had not lied to the police or guessed at the details that she had previously provided, she hedged her answers by stating that she told the police what she thought she knew, but that she was not "for sure" about what happened. Her exact testimony bears repeating: "Well, sir, all I know is I — what I told the cop is what I think I know. I didn't — I wasn't for sure. I just know what I thought.... But I was not for sure." These answers

are hardly full and unequivocal admissions of having made the prior inconsistent statements. *See Roberts v. State*, 278 Ark. 550, 648 S.W.2d 44 (1983).

■ The second and third requirements of Rule 613(b) were also met. Appellant was given the opportunity to explain or deny the witness's prior inconsistent statements, and he was given the opportunity to interrogate her about them. The record reflects that Appellant was able to conduct a full cross-examination of the witness, during which defense counsel attempted to rehabilitate her credibility. For example, defense counsel pointed out that it had been some nineteen months between the time the crime had occurred and the time of trial. Defense counsel also attempted to suggest that the witness was either too far away to have seen much of the fight or was too distracted from fighting with her husband to be able to accurately recall the event. Accordingly, the trial court did not abuse its discretion in allowing the State to present extrinsic evidence of the witness's prior inconsistent statements.

We reject Appellant's reliance on the holdings in *Roberts*, 278 Ark. 550, 648 S.W.2d 44, and *Smith*, 279 Ark. 68, 648 S.W.2d 490. Neither of those cases presented facts that would have sustained the use of extrinsic evidence for impeachment. Both cases involved witnesses who admitted that they had made prior inconsistent statements and that those prior statements were false. Thus, under Rule 613(b), extrinsic evidence was not admissible. Moreover, in *Roberts*, the state was aware before the trial that the witness had recanted his prior statements. Nonetheless, the trial court allowed the state to introduce the complete text of the witness's statement through a deputy sheriff. This court reversed, holding that "[o]nce a witness has fully and unequivocally admitted making the prior inconsistent statement, then it cannot be proven again through another witness." *Roberts*, 278 Ark. at 552, 648 S.W.2d at 46 (citing McCormick, *Evidence* § 37, at 72-73 (2d ed. 1972)). This court held further that because the prior statement was unsworn, it could not be admitted as substantive evidence under Rule 801(d)(1)(i). This court ultimately concluded that the impeachment of the witness in that situation was "a mere subterfuge" for the prosecution's true intention of introducing the hearsay statements as substantive evidence of the defendant's guilt. *Id.* Under those circumstances, this court held that the error was not cured by an instruction to the jury directing them to consider the prior statements for impeachment purposes only.

One month after the decision in *Roberts*, this court decided *Smith*, 279 Ark. 68, 648 S.W.2d 490. In that case, the witness recanted his prior statements on the witness stand, while testifying for the state. The witness readily admitted that he had lied in his previous statements to the police, and that he had falsely implicated the defendant in the crime charged. Despite his full and unequivocal admissions, the prosecutor sought to introduce the witness's written statement previously given to police. The trial court initially sustained defense counsel's objection that the statement was hearsay. Later, however, the prosecutor was permitted to read the statement to the jury over the defense's objection. On appeal, this court reversed on the ground that it was "manifest from the record that [the witness's] written statement was read to the jury, not for purposes of impeachment, but as substantive evidence to prove the truth of the matters asserted in it." *Id.* at 69, 648 S.W.2d at 491. As in *Roberts*, the decision in *Smith* turned on the pivotal fact that the witness had admitted making the prior inconsistent statements and had admitted that he had lied. Under those circumstances, extrinsic evidence of the lies was not admissible.

Contrary to the position taken by Appellant and the dissent in the court of appeals, the holding in *Smith*, 279 Ark. 68, 648 S.W.2d 490, did not limit that in *Chisum*, 273 Ark. 1, 616 S.W.2d 728. *Smith* merely concluded that *Chisum* was not controlling, because the witness had admitted to the jury that he had lied in his previous statements. Thus, through his own admission, his believability had been impeached, and extrinsic evidence of his prior statements was not admissible under Rule 613(b). Furthermore, because they were not given under oath and subject to the penalty of perjury, the prior statements were not exempt from the hearsay rule under Rule 801(d)(1)(i). Thus, the decision in *Smith* did not turn on the form of the evidence used, *i.e.*, the witness's prior statements read in their entirety by another person. Rather, that decision turned on what this court concluded were impermissible purposes for admitting the evidence. Accordingly, *Smith*, does not stand for the proposition that it is error to allow the impeachment of a witness by introducing extrinsic evidence of prior inconsistent statements through the testimony of a second witness or through the admission of documentary evidence. Were that the case, Rule 613(b) would have no meaning. Nor does *Smith* stand for the proposition that a witness may not be impeached with prior inconsistent statements unless those statements were given under oath and are thus admissible as substantive evidence. Again, were that the case, Rule 613(b) would have no meaning independent of Rule 801(d)(1)(i).

█ In sum, the factual circumstances presented in *Roberts* and *Smith* precluded the use of extrinsic evidence to impeach the witnesses, who both admitted to having lied in their prior statements. The facts here are quite distinguishable from those. In this case, the witness did not fully and unequivocally admit that she had made the incriminating statements to the police. Rather, all she admitted was that she had given an interview to the police. Her testimony reveals that when asked about specific statements that she had made to the officer, she repeatedly professed a lack of memory. As such, the holdings in *Roberts* and *Smith* are not controlling of this appeal, and the trial court did not err in allowing the witness to be impeached through the admission of extrinsic evidence of her prior inconsistent statements.

## II. Use of Prior Inconsistent Statements as Substantive Evidence

In a related argument, Appellant contends that *Smith,* 279 Ark. 68, 648 S.W.2d 490, mandates reversal because the prosecutor impermissibly used Kim's prior statements to police, introduced through the officer, as substantive evidence of Appellant's guilt, in violation of Rule 801(d)(1)(i). Specifically, Appellant points to the prosecutor's repeated references to Kim's prior statements during his closing argument to the jury. Appellant thus contends that the prosecutor's actions demonstrate that the evidence was not admitted as impeachment evidence, but as substantive evidence of his guilt. We reject this argument for two reasons.

█ First, the record is devoid of any objection to the improper use of the evidence during the prosecutor's closing argument. Because he failed to make a timely objection in the trial court, he has waived this argument on appeal. *See, e.g., Marshall v. State,* 342 Ark. 172, 27 S.W.3d 392 (2000); *State v. Montague,* 341 Ark. 144, 14 S.W.3d 867 (2000). The record reflects that during the in-chambers hearing held prior to the introduction of the statements, the trial court ruled that it was admitting the testimony as impeachment evidence under Rule 613(b) and *Chisum,* 273 Ark. 1, 616 S.W.2d 728. Had Appellant objected to the prosecution's later use of the statements as substantive evidence, the trial court would have undoubtedly sustained the objection.

█ Second, we reject Appellant's argument because he failed to ask for a limiting instruction directing the jury to consider the prior statements *only* for purposes of determining the witness's

credibility. "When evidence is admissible for one purpose but not for another, an objection is wholly unavailing unless the objecting party asks the court to limit the evidence to its admissible purpose." *Chisum*, 273 Ark. 1, 9, 616 S.W.2d 728, 732 (citing *City of Springdale v. Weathers*, 241 Ark. 772, 410 S.W.2d 754 (1967); *Shipp v. State*, 241 Ark. 120, 406 S.W.2d 361 (1966); Uniform Evidence Rule 105). Similarly, Ark. R. Evid. 105 provides that when evidence is admissible for one purpose but not another, it is up to the objecting party to request a limiting instruction from the trial court. *Crawford v. State*, 309 Ark. 54, 827 S.W.2d 134 (1992). When an appellant contends that the failure to give a cautionary or limiting instruction at trial constitutes reversible error, the failure to request the instruction precludes reversal based on that claim. *Eliott v. State*, 342 Ark. 237, 27 S.W.3d 432 (2000).

In the present case, as discussed above, the witness's prior statements were properly admitted for the purpose of impeaching her testimony at trial. It was thus Appellant's burden to request a limiting instruction directing the jury to consider her prior inconsistent statements only for the purpose of judging the witness's credibility, and not for the truth of the matter set forth therein. *See* AMCI 2d 202. Because there was no request for a limiting instruction, the trial court was not required to give one.

Again, we are not persuaded by Appellant's reliance on *Smith*, 279 Ark. 68, 648 S.W.2d 490, and *Roberts*, 278 Ark. 550, 648 S.W.2d 44. In those cases, extrinsic evidence of the witnesses' prior statements was not admissible for *any* proper purpose. Because the witnesses admitted to having lied in their prior statements, the statements themselves had no impeachment value and were thus not admissible under Rule 613(b). Moreover, because, the prior inconsistent statements were not made under oath, they were not alternatively admissible under Rule 801(d)(1)(i). Accordingly, the error in admitting the prior statements in *Smith* and *Roberts* could not have been cured by a limiting instruction.

### III. Right to Confrontation of the Witness

For his last point for reversal, Appellant argues that he was denied his right to confront the witness about her prior inconsistent statements because they were admitted through the testimony of another witness. He argues that it was not possible to ask the officer about Kim's powers of observation and perception at the time, as

well as the physical circumstances that may have affected her statements about the fight. We find no merit to this argument, as Appellant was afforded a full opportunity to ask Kim about the circumstances surrounding the fight and her prior statements to Dean.

The Confrontation Clause, found in both the United States and Arkansas Constitutions, is intended to permit a defendant to confront the witnesses against him and to provide him with the opportunity to cross-examine those witnesses. *See Smith v. State*, 340 Ark. 116, 8 S.W.3d 534 (2000); *Huddleston v. State*, 339 Ark. 266, 5 S.W.3d 46 (1999). Appellant was not denied his right to confront Kim at trial, nor was he denied the right to fully cross-examine her regarding her prior inconsistent statements. As evidenced by her direct testimony, set out above, the prosecutor asked Kim about the individual statements that she had made to the police. Appellant was then allowed to cross-examine her about those statements.

The record reveals that defense counsel cross-examined Kim on how close she stood to the fight, the effect of her fight with her husband, and the fact that the trial took place over a year and a half after the fight. Had he chosen to do so, he undoubtedly would have been allowed to ask her about the lighting that night, the type of knife that she allegedly saw Appellant use, the effect of her pregnancy on her ability to remember and recall the event, and any other issue that he now claims may have touched upon her ability to recall. There is no indication from the record that the trial court in any way attempted to limit Appellant's cross-examination of Kim. The record also reflects that Appellant was given a full opportunity to cross-examine Dean about the circumstances of his interview of Kim. Appellant certainly could have called Kim as his own witness if he had any further questions stemming from Dean's testimony of her statements. We thus conclude that Appellant was not denied the right to confront the witnesses against him.

*IV. Conclusion*

The trial court did not err in allowing the prosecutor to impeach Kim with her prior statements, as Kim's testimony was sufficiently inconsistent with her prior statements to the police. Moreover, because Kim was given the opportunity to explain or deny the prior inconsistent statements and did not admit having made the statements, it was not error to allow the prosecutor to

introduce extrinsic evidence of her prior statements under Rule 613(b). Because the prior statements were properly admitted for impeachment purposes, and not for the truth of the matter asserted by them, the statements were not hearsay. Thus, it was irrelevant that they were not given under oath and subject to the penalty of perjury, as provided in Rule 801(d)(1)(i). That the prior statements were later used as substantive evidence by the prosecutor during closing argument is of no consequence, as Appellant did not make a timely objection, nor did he ask for a limiting instruction directing the jury to consider the prior statements only as impeachment evidence. Lastly, there was no violation of Appellant's right to confront the witness due to the admission of extrinsic evidence of the witness's statements. Appellant was afforded a full and fair cross-examination of the witness. We thus affirm the judgment of conviction.

THORNTON, J., concurs.

RAY THORNTON, Justice, concurring. In my view, it was error to allow Kimberly's previously unsworn statement to be admitted into evidence, and to be used as substantive evidence supporting Michael Kennedy's conviction.

The only permissible use of the unsworn statement was to impeach Kimberly's credibility as a witness. Kimberly did not deny making a prior inconsistent statement, but responded to a detailed cross-examination revealing the inconsistencies between her sworn statement during trial with the notes made by Officer Dean concerning what he heard her say within a few days of the incident.

Perhaps the use of Officer Dean's notes for purposes of cross-examination was appropriate to impeach Kimberly's sworn testimony at trial, but such use is a far cry from allowing Officer Dean's notes of his recollection of an earlier unsworn statement to be read to the jury and used by the prosecutor as substantive evidence of the commission of the crime.

By allowing the officer's notes to be read to the jury as a reflection of an earlier unsworn statement by Kimberly, we are standing the prohibition against hearsay on its head, and the use of Officer Dean's notes for that purpose was clearly an abuse of discretion. In *Smith v. State, supra,* the fact that a prior inconsistent statement was read in its entirety to the jury, and treated as substantive evidence in argument by trial counsel, convinced us that the

statement was impermissibly used as substantive evidence and was not used merely for impeachment.

In this case, by having Officer Dean read his notes of Kimberly's prior unsworn statement to the jury and by using it as substantive evidence in its closing argument, the State used Kimberly's statement in precisely the manner that was proscribed by *Smith v. State, supra.*

In closing arguments, the State treated Kimberly's unsworn statement as if it were substantive evidence. Specifically, the prosecutor argued:

> Kimberly Kennedy gave a very detailed statement to the police on August 4, 1997, which was a week after this incident. She had seven days to calm down and think about it. She saw a knife in Michael's right hand and in the left hand. She saw Lanny fall. She saw her husband pull Michael off of Lanny and take him back to the truck. Kim saw Michael hit Lanny first. That was her statement. The first blow Kim talked about was Michael striking Lanny in the face. That's what she said.

The prosecutor never points out that the earlier statement on which he relies was unsworn and not admitted as substantive evidence. The prosecutor also explained to the jury that they should "believe" Kimberly's earlier statement because, as a person with a hearing impairment, she was "more perceptive" and a better "observer."

However, as clear as the error in using an unsworn statement for substantive proof supporting a conviction, it is regrettably equally clear that Kennedy did not request a limiting instruction to allow consideration of the prior statement only for impeachment purposes, and no objection was made to the prosecutor's flagrant use of the unsworn statement as substantive evidence supporting a conviction during closing arguments. As the majority correctly notes, we have often held that the failure to make a timely objection, thereby allowing the trial court to rule on the issue, prevents us from reaching a point on appeal. *See Pyle v. State*, 340 Ark. 53, 8 S.W. 3d 491 (2000). For that reason, I reluctantly concur in the result.